381 So.2d 554 (1980)
Richard D. ELSTON et al., Plaintiffs-Appellants,
v.
VALLEY ELECTRIC MEMBERSHIP CORPORATION, Defendant-Appellee.
No. 14052.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1980.
*555 Goode & Overdyke by D. F. Overdyke, III, Shreveport, for plaintiffs-appellants.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendant-appellee.
Before PRICE, MARVIN and JONES, JJ.
PRICE, Judge.
Plaintiffs filed this suit for damages resulting from defendant's negligent replacement of an electrical transformer which serviced their home. Although liability was admitted by defendant, both parties appeal the trial court's award of damages. We affirm.
In January 1977 plaintiffs began extensive remodeling of their home located on the Ellerbe Road south of Shreveport. On November 2, 1977, approximately two months after plaintiffs moved in, defendant's employees mistakenly replaced the electrical transformer servicing the home with one of twice its capacity. This caused a surge of electricity which destroyed all the electrical appliances, light fixtures, and outlets and caused some minor cosmetic damage to the interior of the home.
Defendant conceded liability and the bulk of plaintiffs' damages for replacement of the appliances and repairs to the home was stipulated. Trial was held regarding plaintiffs' other items of alleged damage which included lost wages and inconvenience, mental anguish, and diminution in the market value of the home. The court awarded Mr. Elston $500 for lost wages and inconvenience but found he had sustained no mental anguish. Mrs. Elston was awarded $600 for lost wages and an additional $5,000 for her mental anguish. No recovery was allowed plaintiffs for diminution in the market value of the home.
Plaintiffs appeal claiming the trial court erred in denying Mr. Elston damages for mental anguish and in denying recovery for diminution in the market value of the home. Defendant answers the appeal contending the trial court's award to Mrs. Elston for mental anguish was improper.
Neither plaintiff was present when the initial surge of electricity occurred. Mr. Elston arrived home from a business trip shortly after the damage occurred and traced a burning odor to a television set in a bedroom. He then turned on a switch in the hall. This apparently caused a light bulb to explode. In the kitchen and in the utility room he noticed that two refrigerators and a freezer were short cycling. The refrigerator in the kitchen was hot to the touch, so he pulled it away from the wall and unplugged it. He then telephoned defendant and turned off the electricity at the outside breaker box. Mrs. Elston arrived home some time later with their two children.
For three or four years before the incident Mrs. Elston had recurring nightmares about suffocation. These nightmares caused her some anxiety but she did not seek professional help. After the damage to her home, however, these nightmares became more intense and frequent. While hysterical during one nightmare, Mrs. Elston cut herself when she broke a bedroom window with her hands in an attempt to get air. On another occasion she found herself in an extreme panic attempting to rescue her son from imagined suffocation.
The increased frequency and severity of the nightmares prompted her to consult a psychiatrist who testified that the intensification of Mrs. Elston's problem was directly related to the trauma caused by the electrical *556 damage to her newly remodeled home. The psychiatrist explained that although the home was repaired and tested for safety, Mrs. Elston's subconscious anxiety was substantially increased by the fact that the electricity had seriously malfunctioned and threatened the security of her home. This threat to the home was particularly disturbing to Mrs. Elston because she lived in the home during her childhood and had developed a strong emotional attachment to it. He further stated that her psychological condition was serious enough to pose a real threat to her life.
The cases dealing with the question of damages for mental anguish resulting from injury to one's property reveal several different approaches as to whether or not such damages are recoverable. In Farr v. Johnson, 308 So.2d 884 (La.App.2d Cir. 1975) this court categorized the cases allowing recovery into four general areas: (1) where the property was damaged by an intentional or illegal act; (2) where the property was damaged by acts giving rise to strict or absolute liability; (3) where the property was damaged by activities amounting to a continuous nuisance; and (4) where the property was damaged under circumstances where the owner was present or nearby at the time the damage occurred and suffered a psychic trauma in the nature of or similar to a physical injury as a direct result of the incident itself.
The criteria set forth in Farr, under which recovery for mental anguish may be allowed, are not inflexible or exclusive. See Todd v. Aetna Casualty & Surety Co., 219 So.2d 538 (La.App.3rd Cir. 1969). Due to the highly subjective nature of mental anguish claims and their susceptibility to fabrication or exaggeration, our courts developed these criteria to limit recovery to cases where both the mental injury and the causal relation to the property damage are clearly established. Furthermore we note that the cases in which recovery was denied on the ground that plaintiff was not physically present when the property damage occurred emphasized that absent the circumstance of his presence, the plaintiff could not show that the anguish he suffered was directly caused by the accident. Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La.App.3rd Cir. 1977); Hymel v. Tom Alexander Brokerage Co., 348 So.2d 104 (La.App.4th Cir. 1977). In the present case Mrs. Elston has clearly shown that she has suffered a psychic trauma in the nature of or similar to a physical injury, and that this trauma was a direct result of the damage to her home. The trial court's award of damages to Mrs. Elston was proper, notwithstanding that she was not physically present the moment the incident occurred.
The trial court correctly rejected Mr. Elston's claim for damages for mental anguish. In Farr, supra, we held that the "mental anguish" must be a real mental injury. The usual worry over the consequences of property damage (where a plaintiff suffers no direct mental injury from the negligent act) will not justify an award for mental anguish damages. The $500 awarded to Mr. Elston included lost wages and compensation for the inconvenience in attending to the repair of the damages. We find no error in the trial court rejecting his demand for mental anguish damage.
Plaintiffs' demand for damages for diminution in the market value of their home was also rejected. The wiring in the Elston home was tested after the incident and found to be safe and undamaged. Plaintiffs contend, however, that a potential buyer who knew of the accident would be apprehensive of possible future electrical problems and would consequently be less eager to purchase the home. Plaintiffs further contend that the proper measure of damage for this loss of value should be the cost of rewiring the home.
The incident caused no damage to the wiring, and therefore it is not necessary to totally rewire the house. The trial court correctly considered that plaintiffs' claim for loss of value was speculative under these circumstances.
The expert testimony regarding the loss in market value of the home was based on an assumed possibility that the wiring was *557 actually damaged and that a potential buyer aware of such a possibility would not be assured the home was safe without a total rewiring. Since the wiring has been tested by an expert electrical engineer and found to be safe and undamaged such a possibility does not exist.
The judgment is affirmed. Costs of this appeal shall be taxed equally to plaintiffs and defendant.