499 So.2d 517 (1986)
Rodger THOMPSON, et ux. Plaintiff-Appellee,
v.
Jimmy SIMMONS, et al. Cable T.V. of Louisiana, Inc. Defendant-Appellant.
Pearline WALKER, Plaintiff-Appellee,
v.
Jimmy SIMMONS, et al. Cable T.V. of Louisiana Inc., Defendant-Appellant.
Nos. 18196, 18197-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
Writ Denied February 13, 1987.
*518 Davenport, Files & Kelly by Ramsey L. Ogg, Monroe, for defendant-appellant.
Hunter, Scott, Blue, Johnson & Ross by Willie Hunter, Jr., Monroe, for plaintiffsappellees.
Before MARVIN, JASPER E. JONES and CULPEPPER, ad hoc, JJ.
MARVIN, Judge.
In these two cases consolidated on appeal, the defendant cable TV company appeals a judgment that awarded each of the homeowner plaintiffs $1,000 for property damage and $2,500 for inconvenience and mental anguish. The damage arose when defendant's cable overhanging a Monroe street caught on a truck-trailer driving underneath the cable and was forcibly pulled from the roof of each home where it was attached, causing the damage of which plaintiffs complain.
Others that were legally related to the truck were joined as co-defendants but were later dismissed from the action. The cable TV company stipulated that the sole cause of the damage was the low-hanging cable and each case was tried only on the issue of quantum.
Defendant contends that the damages awarded were excessive and were not proved by competent and admissible evidence. We agree and shall amend to reduce each award.
As amended, each judgment shall be affirmed.

FACTS
A damage appraiser-adjuster for the liability insurer of the defendant first inspected the damage about 10 days after it had occurred to the homes owned by plaintiff Mrs. Walker and by plaintiffs Mr. and Mrs. Thompson who were across-the-street neighbors. The damage was to each roof where the cable was attached. Defendant's appraiser estimated that labor and materials necessary to repair the damage would total $293.75 in Mrs. Walker's case and $85 in the Thompsons' case.
Plaintiffs then obtained estimates for completely reroofing their homes from roofing contractors. One contractor later revised his estimate on each home on the basis of the partial reroofing after meeting with defendant's appraiser. Plaintiffs learned that this contractor and defendant's appraiser could not agree on what *519 work was necessary to accomplish the repair. This contractor estimated that the repair of Mrs. Walker's roof would cost $985 and the repair of the Thompsons' roof and the interior of their home would cost $1,082.
When the cases were tried eight months after the damage occurred, neither plaintiff had caused any repair to be made. Neither plaintiff called a contractor to testify in support of their demands, but relied on cross-examination of defendant's appraiser. Neither plaintiff offered any explanation why their contractors were not available or present to testify.
Over the objection of defendant on the grounds of inadmissible hearsay, the trial court allowed plaintiffs to identify and introduce the contractor's written estimate of the cost of repairing the damage. The trial court admitted the testimony and the repair estimates "subject to" defendant's objection. In its reasons for judgment, the trial court stated:
The bids submitted by plaintiff could not per se be considered because the contractor was not available for cross-examination. However, ... the evidence clearly shows that the damages to the homes are far in excess of the amounts estimated by the [defendant's] adjuster.
We must respectfully disagree with the trial court's statement.
The plaintiffs did not witness the cable being pulled from their homes but viewed the damage after it had been done. They testified they had no experience in carpentry or roof repair and relied on the explanation by one or more contractors of the extent of roof damage. Although Mr. Thompson testified he could stand on the carport and see "clean through" the roof with the attic door open, he acknowledged that the photographs taken by defendant's adjuster shortly after the accident accurately reflected the exterior damage. These photographs, as well as those taken of Mrs. Walker's roof, reflect minimal rather than extensive damage to each home.
The Thompsons testified they were "bothered" because the exterior damage was unsightly for such a long time, contrary to their practice of maintaining their home in good condition. They claimed "aggravation" because the defendant did not quickly attend to the repair. They testified their homeowner's insurer told them defendant's insurer was responsible for the repairs. They described water stains on the ceiling in the kitchen and storage room which formed when it rained after the accident. This also aggravated them because they considered that defendant should have quickly fixed the roof.
Mrs. Walker testified of similar aggravations as well as the burden of putting pans on her bed and sleeping on the couch when it rained because the roof damage was over her small bedroom and she was unable to move her bed to keep it from getting wet.
Defendant's appraiser described in detail his inspections of each house and his calculation of the labor and materials he estimated was necessary for the repair of the damage. He acknowledged that four to six weeks after the incident he noticed some water damage inside the Thompson home. He was not asked, before or during the trial, to estimate the cost of repairing this damage. He testified that he was not aware that Mrs. Walker was claiming any damage to the interior of her home until the day of the trial. Mrs. Walker explained that the damage to the interior of her home was not apparent or visible when defendant's adjuster made his inspection 10 days after the incident occurred.

PROPERTY DAMAGE
The written repair estimate made by a contractor who does not testify at trial is hearsay evidence. Santangelo v. Capitol Home Planners, 424 So.2d 1214 (La.App. 1st Cir.1982). Where a plaintiff does not explain why his contractor is unavailable to testify in support of an estimate the estimate should not be admitted into evidence over the hearsay objection of defendant or considered by the court. Ordonez v. Maryland Casualty Company, 312 So.2d 875 (La.App. 4th Cir.1975).
*520 The testimony of defendant's appraiser was the only admissible opinion evidence before the trial court that estimated the cost of repair.
If a loss has been proved but the exact amount of the damage cannot be established, the trial court has reasonable discretion to assess damages based upon all the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). A trial court, however, may not supply its own estimate of repair costs solely on the basis of a claimant's description of the damage sustained where the valuation of damage is susceptible of reasonable determination by experts and the cost of repairs is easily estimated. Derouen v. Department of Transportation and Development, 392 So.2d 765 (La.App. 3d Cir.1980); Scott v. City of Alexandria, 446 So.2d 986 (La.App. 3d Cir.1984).
The cost of repairing the property damage sustained by these plaintiffs is susceptible of being reasonably estimated by expert appraisers or repairmen. Although plaintiffs obtained repair estimates which were higher than defendant's estimate, plaintiffs have not proved in this record by competent and admissible evidence that they are entitled to an amount higher than defendant's appraiser estimated for the cost of repair.
This lawsuit arose obviously because plaintiff's contractor and defendant's adjuster disagreed as to what repairs were necessary. Plaintiffs did not call their contractor to explain his assessment of the damage or to substantiate their contention that no one would undertake the repair if the work was limited to what was suggested by defendant's appraiser.
The only evidence of the necessary extent and the cost of repairs in the interior of each home was contained in the inadmissible hearsay estimates offered by plaintiffs.
As in Derouen, plaintiffs have simply failed to carry their burden of proving the amount necessary to repair their property. The trial court's awards for property damage are not supported by the record and must be reduced to the amounts testified to by defendant's appraiser in the described circumstances.

MENTAL ANGUISH
Although Mrs. Thompson and Mrs. Walker saw the results of the accident while the truck remained at the scene, plaintiffs' claims for mental anguish focus on the weeks and months following the incident when rainwater leaked through the site of the damage.
Every incident of property damage is necessarily accompanied by some degree of worry and consternation over such things as possible financial loss, settlement of insurance claims, and discomfort or inconvenience while awaiting and undergoing the repair. The owner of the damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to a physical injury, directly resulting from the property damage. See Elston v. Valley Electric Membership Corporation, 381 So.2d 554 (La.App. 2d Cir.1980) and cases cited therein.
The property damage in this case was caused by defendant's low-hanging cable TV line or lines. Plaintiffs have not proved psychic trauma resulting directly from the accident. Plaintiffs did not seek treatment for any mental disorders after the accident, as did the plaintiff in Elston, supra. Plaintiffs merely experienced the normal worry and frustration associated with having their property damaged by another. We find that the trial court erred as a matter of law in awarding plaintiffs damages for mental anguish under the described circumstances. Louisiana Farm Bureau Mutual Insurance Company v. Dunn, 484 So.2d 853 (La.App. 1st Cir. 1986); Prather v. Audubon Insurance Company, 488 So.2d 383 (La.App. 3d Cir. 1986).

*521 INCONVENIENCE; LOSS OF USE
The evidence shows that Mrs. Walker was unable to use her bed when it rained because the roof damage was directly over her bedroom. She was also unable to use a ceiling fan in the bedroom because she did not want to risk an electrical fire from water accumulating near and in the electrical connections. We analogize this situation to the loss of use of an automobile during the reasonable time required for its repair following an accident. We find Mrs. Walker is entitled to some recovery for this inconvenience. Russell v. Lloyd's Towing Service, Inc., 381 So.2d 896 (La.App. 2d Cir.1980); Barber v. Best, 394 So.2d 779 (La.App. 4th Cir.1981).
Even though damage is caused by another's fault, the owner of the damaged property has the responsibility to act within a reasonable period of time to protect his or her property from further foreseeable damage which could easily be averted. Ackel v. Coca Cola Bottling Company, 385 So.2d 30 (La.App. 4th Cir.1980).
Mrs. Walker had her son cover the damaged area of her roof with a sheet of plastic held down with bricks. Her son was the only family member who could climb on the roof. He was a college student and was not always at home. The plastic covering was not replaced when wind blew it off the roof.
Although Mrs. Walker's efforts to prevent water from getting inside the house were not completely successful, she did initially attempt to minimize further damage. However, once she knew or should have known that her claim was not going to be immediately resolved, she did not cause at least some temporary repair to be made to protect her property within a reasonable time. Settlement efforts ended about six weeks after the accident. Mrs. Walker could not say how many times it had rained during this period but it was established that some rain was experienced.
Although the precise amount of recovery warranted for Mrs. Walker's inconvenience cannot be determined under the circumstances, we shall affirm $500 as a reasonable and just award. See Carpenter v. Hartford Accident and Indemnity Co., 333 So.2d 296 (La.App. 1st Cir.1976); Jordan v. Travelers Insurance Company, supra.
The Thompsons did not show that they were prevented from using any portion of their home or any actionable inconvenience.

DECREE
The trial court judgment is amended to delete the award to plaintiffs for mental anguish and inconvenience except as hereafter mentioned. The judgment is amended to reduce the property damage award to the Thompsons to $85 and to reduce the property damage award to Mrs. Walker to $293.75. The judgment is amended to reduce the award to Mrs. Walker for inconvenience to $500. Cost of the appeal in the Thompsons' case is assessed to plaintiffs. Cost of the appeal in the Walker case is assessed one-half to defendant and one-half to Mrs. Walker.
AMENDED, and as amended, AFFIRMED.