516 So.2d 1256 (1987)
Floyd A. JONES, et al, Appellants,
v.
DON EDWARDS TIMBER COMPANY, INC., et al, Appellees.
No. 19164-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1987.
Bethard & Davis by Robert E. Bethard, Coushatta, for appellants, Floyd A. Jones, et al.
*1257 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellees, Don Edwards Timber Co. and Don Edwards.
Hudson, Potts & Bernstein by Robert M. Baldwin, Monroe, for appellees, Robert Lee McMillan, Jr. and Rockwood Ins. Co.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
This is a suit for damages for wrongful removal of trees from the plaintiffs' property. The plaintiffs demanded treble damages under LSA-R.S. 56:1478.1 (now redesignated as LSA-R.S. 3:4278.1) for wilfully and intentionally removing trees growing on the land of another, or for removing trees "across ownership lines, marked boundary lines, or outside of designated cutting area lines," plus attorney fees and damages for emotional distress. The trial court found the plaintiffs' trees had been illegally removed but not wilfully and intentionally and not across a marked boundary line, so it awarded only actual damages. It denied the claims for attorney fees and emotional damages. The plaintiffs appeal, seeking treble damages and compensation for emotional distress. For the reasons expressed, we amend and affirm.
The Joneses own a quarter-section tract (160 acres) of standing timber, primarily hardwood, in DeSoto Parish. Mr. Jones uses the tract for hunting only and does not visit it very often.
The Joneses' neighbor to the east, Mr. Scott, has almost a quarter-section (155 acres) of primarily pine which had been harvested about 15 years earlier. In 1984, he decided to clear the tract. He sold the timber to Don Edwards Timber Co. for removal. Don Edwards was working with a timber buyer, McConathy, who had cruised the tract, formulated the bid and was, in effect, an agent or employee for Don Edwards on this project. When the bid was accepted, Don Edwards sent McConathy to mark the boundaries of the Scott tract. All the boundaries were clear except the one between the Scott tract and the Jones tract.
When McConathy went to tag the trees for cutting, he started at Scott's southwest corner and attempted to trace a line due north. He followed a fence along the boundary for about five chains (330 feet), after which the fence "played out" in the dense underbrush. Beyond that point he used his compass and thought he was going due north, but in fact he drifted to the left (west) and flagged off roughly four acres of the Jones tract. Don Edwards then hired a timber cutter, McMillan, to harvest the trees. Under McConathy's supervision, McMillan's crew cut down the large trees all the way to the flagged line. After the cutting was completed, the owner used bulldozers to clear the tract of underbrush. This work was completed by July 1984.
In December 1984, Mr. Jones visited his property and discovered the cutting. In March 1985, he went to Don Edwards to complain. Don Edwards sent McConathy to investigate, and he then realized that his compass work had missed the mark.
The Joneses filed this suit in September 1985, naming as defendants Don Edwards Timber Co. and Don Edwards personally; five months later, Robert Lee McMillan and his insurer were added as defendants.[1] Both sets of defendants filed exceptions of prescription which were dismissed; this ruling was not appealed.
On the substantive issue, the following facts were developed at trial. Mr. Jones testified that the eastern boundary of his property was marked by a wire net fence with barbed wire on top. The fence was erected in the 1930s but had not been maintained since the late 1950s. Mr. Jones said that as of 1984, the fence was visible in places, and elsewhere "you had to look for it," but he admitted at trial that he had not looked for the fence in roughly ten years.
*1258 The Joneses' consulting forester, Mitchell, visited the tract in May 1985. He testified that roughly 500 feet of fence was standing in the southeast corner of the Jones tract, but that north of this, where the overcutting occurred, the fence was reduced to some stray wires on the ground, a piece of wire stuck in a tree, or nothing at all. He admitted that around the middle of the property line, "you could have trouble" finding the line. When Mitchell examined the line, the undergrowth had already been cleared away and a survey line had been staked. R.p. 112. The surveyor, Phelps, testified that roughly 25% of the fence was standing in 1984. Although he said he "could have followed" the fence line, he eventually referred to it in a plat as an "old down fence." Ex. P-8. Phelps conducted his survey after the cutting was completed, and he did not notice whether any timber had been taken from the Jones tract at that time. As already noted, McConathy testified that the fence "played out" in the underbrush a few hundred feet past the stob at the southeast corner. After that, he used a hand compass to pace off a line, flagging the boundary as he went. McMillan testified that he never cut over this line. He admitted that in one place he saw a piece of wire on a tree, but could not see a fence. R.p. 153. Charles Edwards, who testified on behalf of Don Edwards Timber Co., said that when he had previously harvested the Scott tract about 15 years earlier, he had used an "old barb wire fence" for a boundary. However, for the instant cutting he did not visit the site or supervise the cutting; instead he entrusted this to McConathy, on whose rough survey he apparently relied.
The trial court found that despite a good faith effort to flag the line properly, McConathy deviated into the Jones tract. McMillan subsequently cut into the Jones tract, but he never crossed the flagged line. The court further found that the "dilapidated, partial fence" did not serve as the eastern boundary of the Jones tract, such as would justify the award of treble damages. The court awarded the proven, actual damages only, and denied all other claims.

DISCUSSION
By their first four assignments of error, the Joneses urge that the trial court erred in not finding that the fence, or the different quality of forestation between the two tracts, was a sufficient boundary to alert someone in the forestry business that there was a change of ownership. Given this boundary, the Joneses urge, the trial court wrongly held that defendants' conduct must be wilful or wanton in order to impose treble damages. The remedy of treble damages is created by LSA-R.S. 56:1478.1,[2] which establishes two grounds for recovery:
§ 56:1478.1 Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market vlue of the trees cut, felled, destroyed or removed, except however, *1259 that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.

* * *
Subsection B creates a remedy for unauthorized cutting in bad faith. The record before us is devoid of evidence that any of the defendants wilfully or intentionally removed trees from the plaintiffs' tract. McConathy followed the fence until it was no longer discernible and then endeavored to use his compass to mark the boundary. He strayed off out of inadvertence, not malice. Later, McMillan simply followed McConathy's markings. Don Edwards never instructed or encouraged the overcut. This evidence is not sufficient to support a claim that the violation was wilful or intentional. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951).
Subsection C imposes the penalty against a good faith violator only when trees are removed "across ownership lines, marked boundary lines, or outside of designated cutting area lines." We have previously noted that this statute is "somewhat inartfully drafted" and must be read in its entirety to serve the legislative intent. Morgan v. Fuller, 441 So.2d 290 (La.App.2d Cir.1983), writ denied 443 So.2d 596, 599 (La.1983). The inartful drafting lies in the use of the phrase "across ownership lines" without a modifier such as "marked" or "designated." In a literal sense, McConathy crossed an ownership line and caused the plaintiffs' trees to be cut. But if the mere act of crossing an unmarked or undesignated ownership line were sufficient to activate treble damages, then we cannot imagine any offense in which treble damages would not be appropriate. This is certainly not the purpose of the statute; rather, it is to impose the severe penalty of treble damages on violators who flagrantly disregard the property rights of other timber owners. Smith v. Myrick, 412 So.2d 677 (La.App.2d Cir.1982); Garrett v. Martin Timber Co., 391 So.2d 928 (La.App.2d Cir.1981), writ denied 397 So.2d 804 (La. 1981).
This problem surfaced in the very first case reported under the statute. In Shaffett v. Vicks, 385 So.2d 419 (La.App. 1st Cir.1980), the plaintiff "pointed out" the property line to the defendant who, in turn, pointed it out to the loggers. The loggers "mistakenly" cut 1.5 acres over the unmarked line. The trial court, finding that the loggers had gone "across ownership lines," assessed treble damages. The court of appeal reversed, noting there was no visible ownership lines, marked boundary lines or designated cutting area lines. It interpreted § 1478.1C as follows:
If the timber-cutter "in good faith" cuts and removes timber across a property line which is not visibly designated as a demarcation line between two adjacent properties, he is only liable for the fair market value of the timber. He is not liable for triple damages. It should be kept in mind that as a punitive measure, this statute must be strictly construed; it is only when a person clearly violates its provisions that he will be assessed the severe penalty of triple damages. 385 So.2d at 422.
The situation in Shaffett is strikingly similar to that of the instant case. Moreover, we specifically adopted Shaffett's reasoning in Morgan v. Fuller, supra. Treble damages will not be imposed for cutting across an ownership line which is not visibly demarcated between adjacent tracts.
The issue is therefore whether the ownership line was visible. The trial court specifically found this fence was not adequate to serve as a boundary between the tracts. The finding cannot be reversed absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). The jurisprudence firmly supports the trial court's conclusion that a dilapidated fence, or remnants of a fence, do not serve as a visible boundary. See Garrett *1260 v. Martin Timber Co., supra; Brown v. Bedsole, 447 So.2d 1177 (La.App. 3d Cir. 1984), writ denied 450 So.2d 358 (La.1984). Bearing in mind that the Joneses' fence was apparent only to Mr. Jones, his forester and to a surveyor who plotted the line after the underbrush had been cleared, we can discern no manifest error in finding that the occasional scraggly wires did not serve as a visible ownership line.
The Joneses also argue that the timber line served as a marked boundary, citing Gewin v. Willamette Industries, 406 So.2d 730 (La.App. 3d Cir.1981). Gewin held that a 20 years' difference in growth between adjacent tracts, plus a blazed line, created a glaring boundary to any competent forester. In the instant case, the Joneses rely on the testimony of McConathy and McMillan that the forestation on the Scott tract, consisting of bull pine that had been last harvested about 15 years ago, was noticeably different from that of the Jones tract. However, McConathy testified that he did not tie any flags in the noticeably different western tract. R.p. 176. Likewise, McMillan denied cutting any of the "taller" trees of the western tract. R.p. 163. Even Mr. Jones admitted that the previous harvest on the Scott tract had overcut into his property. R.p. 89. This evidence leads to the conclusion that the noticeable timber line probably ran along the previous overcut and did not correspond to the true boundary. In other words, the apparent "timber line" did not put the defendants on notice of the actual boundary between the two tracts. Rather, McMillan may have cut up to the timber line in places. Under these circumstances, we cannot say the trial court was manifestly erroneous in finding that the defendants did not cross an ownership line evidenced by a marked difference in forestation.
The Joneses characterize the defendants' conduct as "irresponsible and negligent," such as should fall within the ambit of the treble damages authorized by the statute. However, the trial court was not clearly wrong in concluding that their conduct did not fall into the category for which treble damages are allowed.[3] We would note that the statutory remedy is significantly more beneficial to the plaintiffs than the common-law remedy in force before enactment of this statute. Under prior case law, a bad-faith trespasser whose conduct was not "knowing and wilful" was liable for the value of the trees minus labor and expense of harvesting. Bolles Wooden Ware Co. v. United States, 106 U.S. (16 Otto) 432, 1 S.Ct. 398, 27 L.Ed. 230 (1882); Kennedy v. Perry Timber Co., supra. The evidence does not support the claims of manifest error advanced by the Joneses in these assignments.
By their fifth assignment, the Joneses claim the trial court erred in failing to award damages for mental anguish. These damages are recoverable only when the conduct is so wilful and wanton as to amount to bad faith. Garrett v. Martin Timber Co., supra; McGee v. SECO Timber Co., 350 So.2d 1265 (La.App. 3d Cir. 1977). The defendants' conduct did not meet this standard. Furthermore, the evidence adduced would not warrant an award for mental anguish even if the proper standard had been shown. See Thompson v. Simmons, 499 So.2d 517 (La.App. 2d Cir. 1986), writ denied 501 So.2d 772 (La.1987), and authorities therein. This claim was properly denied.
We note, finally, that the trial court's judgment casts the surveyor, Herman McConathy, as a solidary debtor for the damages. However, the plaintiffs never named him as a defendant and he was never cited and served; he was not third-partied or argued to be an indispensable or necessary party. The judgment is therefore null insofar as it pertains to him. LSA-C.C.P. art. 1841; Amer. Fidelity Fire *1261 Ins. Co. v. Atkison, 420 So.2d 691 (La.App. 2d Cir.1982); Erskine v. Gardiner, 162 La. 83, 110 So. 97 (1926); New Orleans Land Co. v. Leader Realty Co., 255 U.S. 266, 41 S.Ct. 259, 65 L.Ed. 621 (1921).
The judgment is therefore amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Floyd A. Jones, et al., and against defendants, Don Edwards Timber Co. Inc., Don Edwards, individually, Robert McMillan and Rockwood Insurance Co., in solido, as follows:

* * * *
The judgment is in all other respects affirmed. Costs are assessed to appellants.
AMENDED AND AFFIRMED.
NOTES
[1] Herman McConathy was never named a defendant but was cast in judgment. The decree will be amended accordingly. See discussion, infra.
[2] This statute was enacted by LSA-Acts 1974, No. 692. In 1986, the functions of the Forestry Commission were transferred from Wildlife and Fisheries to the Department of Agriculture and Forestry. LSA-Acts 1986 No. 581. The statute was therefore redesignated as LSA-R.S. 3:4278.1, pursuant to the reporter's authority of LSA-R.S. 24:253.
[3] We are aware of no case in which the trial court's award of actual damages has been overturned in favor of treble damages.