521 So.2d 837 (1988)
Johnny EVANS, et al., Appellants,
v.
B.R. BEDSOLE TIMBER CONTRACTORS, INC., et al., Appellees.
No. 19414-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Jack R. Gamble, Jr., Mansfield, for appellants.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for appellees.
Before MARVIN, JASPER E. JONES and NORRIS, JJ.
*838 NORRIS, Judge.
The plaintiff sued for trespass and wrongful cutting of timber from his property in DeSoto Parish. The trial court found that the defendants' conduct was wilful and intentional; pursuant to a special statute, it imposed damages of three times the fair market value of the trees cut and removed. The court also awarded property damage for illegally removing plaintiff's fence posts; and attorney fees and expert witness fees as costs. From this judgment the plaintiff appeals, urging four assignments of error:
(1) The trial court erred in failing to award damages for emotional distress.
(2) The trial court erred in failing to award damages for the loss of young, unmerchantable trees and damage to land surface.
(3) The trial court erred in awarding only $200.00 per expert witness when their time and expense was greater.
(4) The trial court erred in awarding an inadequate attorney fee of $1,000.00 when the work expended merited a larger award.
For the reasons expressed, we amend and affirm.

FACTS
The overcut occurred in April 1985 when employees of Bedsole Wood Corp. were harvesting the timber off the Charles Smith Tract in DeSoto Parish pursuant to a chipping contract. The Smith tract is adjacent to the Evans tract, but was separated by a fairly recent and plainly visible four-strand barbed wire fence. According to Jackie Bedsole, who had purchased the Smith timber for Bedsole Wood Corp., the gate in Evans's fence was wide open and two posts were already pulled out of the ground; Bedsole's crew pulled up some more posts and took some heavy equipment through the opening. They ultimately cut 2.4 acres of Evans's land.
Johnny Evans testified that his family had owned the 121.5 acre tract since a patent to his great-grandfather Noah Evans in 1878, and that prior to owning the land, Noah Evans had worked it as a slave for "Old Master Evans." Mr. Evans testified that several of the larger trees in the affected area had been there since slavery days, so he had never cleared the tract and had no intention of doing so. Rather, he used the land for squirrel hunting and derived some revenue from a mineral lease on it. He testified that he was "hurt" over the loss of the trees and "upset" that someone would just go in and cut his timber without asking.[1]
To prove his losses, Mr. Evans hired three experts. Mr. Allison, a forester with Dowling Forest Services, visited the site a few weeks after the overcut. He performed a timber count and estimate; he testified that the value of the trees was $297.92. Mr. Dowling, the owner of Dowling Forest Services, visited the site roughly two years after the overcut and verified Mr. Allison's stump count. Using Mr. Allison's stump count and estimate, he also testified that the lost timber was worth $297.92. He added that reforestation of the area would cost about $348. Mr. Murphy, a surveyor, also visited the site about two years after the overcut. He conducted a survey, drew a plat and testified that for the most part Mr. Evans's fence stood on the boundary of the Evans and Smith tracts.
The defendant, Jackie Bedsole, admitted that there was an overcut. Both he and his foreman, Valentine, testified they thought the fence, with its wide open gate, was a "cross fence." Mr. Bedsole said the timber looked the same on both sides of the fence, although Valentine testified that the Evans tract had "evener size hardwood."
The trial court found that there was a highly visible four-strand barbed wire fence separating the tracts. It also found that Bedsole's crew intentionally removed and damaged the gate, entered the Evans property and commenced cutting and removing *839 timber. Pursuant to LSA-R.S. 56:1478.1 B (now redesignated as R.S. 3:4278.1 B)[2] it awarded three times the fair market value of the timber cut, for a total of $893.76. It also awarded $50.00, which Mr. Evans had testified would be the cost of repairing the fence and gate. The court rejected all other demands for damages as not being supported by the evidence. It set attorney fees at $1,000.00 and expert witness fees at $200.00 apiece. From this judgment, plaintiff moved for a new trial, which was denied. This appeal followed.

ASSIGNMENT 1: MENTAL ANGUISH
By this assignment, plaintiff contends the trial court erred in not awarding him damages for mental anguish. In brief, he contends that he and his family have a great sentimental attachment for the land involved. It has been in his family since 1878 and has provided recreation in the form of hunting, as well as revenue from mineral leases. Mr. Evans visits it on a regular basis and is dismayed to see it laid barren. We initially questioned Mr. Evans's right to claim damages without some proof that he was in fact the owner of the land rather than simply the succession representative of the deceased owners but since neither the defendants nor the trial court contested his ownership, we will not consider it an issue.
Every incident of property damage is necessarily accompanied by some degree of worry and consternation over such things as possible financial loss, settlement of insurance claims, and discomfort or inconvenience. The owner of the damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to physical injury, directly resulting from the property damage. Elston v. Valley Electric Membership Corp., 381 So.2d 554 (La.App. 2d Cir.1980); Thompson v. Simmons, 499 So.2d 517 (La. App. 2d Cir.1986), writ denied 501 So.2d 772 (La.1987). This standard of proof is applicable to cases of trespass and wrongful removal of timber. Jones v. Don Edwards Timber Co., 516 So.2d 1256 (La.App. 2d Cir.1987).
The property damage in this case was caused by the defendants' intentional crossing of a highly visible fence, cutting and removing the plaintiff's trees and reducing them to wood chips. Plaintiff did not prove psychic trauma as a result of this; he did not seek treatment for any mental disorders after the incident, as did the plaintiff in Elston, supra; he merely testified that he was "upset" and "hurt." This strikes us as nothing more than normal worry associated with having one's property damaged by another. Moreover, the evidence did not substantiate Mr. Evans's contention that several old trees from slavery days had been downed. The trial court was not in error to find that Mr. Evans was not entitled to damages for mental anguish.
Plaintiff cites Gewin v. Willamette Indus., Inc., 406 So.2d 730 (La.App. 3d Cir. 1981), as a case in which mental anguish was awarded under "less aggravated facts" than in the instant case. This argument is not persuasive. In Gewin the court declined to find that the defendants' conduct was wilful and intentional, but rather imposed treble damages for the "less aggravated facts" of crossing a marked boundary line.[3] Plaintiff's argument *840 seems to be that Bedsole's conduct was more reprehensible than Willamette's and should therefore activate the damages for mental anguish more easily. Indeed, we have imposed damaged for mental anguish in the case of a bad faith trespasser. See McIlwain v. Manville Forest Products, 499 So.2d 1138 (La.App. 2d Cir.1986). However, in both Gewin and McIlwain the respective trial courts have found as a fact that the plaintiff suffered from mental anguish; the factual findings fully justified the awards of mental anguish damages under the standard of Thompson v. Simmons, supra. The instant facts were not as persuasive and the trial court was not clearly wrong to deny the award. The defendants committed a tort for which Mr. Evans is to be compensated by the remedy of treble damages. He has not proved psychic trauma. This assignment of error lacks merit.

ASSIGNMENT 2: REFORESTATION COSTS
By this assignment, plaintiff claims the trial court erred in not awarding damages for the loss of young, unmerchantable trees or reforestation costs. We note at the outset that the plaintiff's brief does not cite us to any evidence of the value of "young, unmerchantable trees," and we are unable to find any in the record. The stump count and estimate from Dowling Forest Services appears to be a complete accounting of the timber taken. The claim for additional lost timber is unsubstantiated and lacks merit.
The alleged cost of reforestation, however, is substantiated by the record. This cost may be recovered if proven. Gewin, supra; Morgan v. Fuller, 441 So.2d 290 (La.App. 2d Cir.1983), writs denied 443 So.2d 596, 599 (La.1983); Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La. App. 3d Cir.1980). Mr. Dowling testified that in order to place Mr. Evans's 2.4 acres back in production, certain costs would be incurred: $70 an acre for site preparation, $30 an acre for trees and $45 an acre for planting. Mr. Dowling admitted on cross-examination that this reforestation scheme would probably leave the tract in better condition than it was before, but he also said that his estimates covered pine reforestation; hardwood reforestation would be more expensive. The defendant argues the trial court was correct to reject these damages, since the tortfeasor should not be required to place the plaintiff in a better condition than he was before.
This problem is similar to the one addressed in Garrett v. Martin Timber Co., 391 So.2d 928 (La.App. 2d Cir.1980), writ denied 397 So.2d 804 (La.1981). In that case, the defendant disputed the cost of replacing an old, worn-down fence with a new one. Just as one cannot build an old fence, one cannot replant an old hardwood stand. The court in Garrett awarded one-half the cost of a new fence. We feel that Mr. Dowling's estimate for pine reforestation, being substantially less than an estimate for hardwood, would be fair compensation for the work needed to restore this tract. Our review of the photgraphs in evidence convinces us that Mr. Evans's land, which is desolate and almost impassable for the debris of vines and branches left by the defendant's crew, is in need of restoration as a result of the trespass. Mr. Dowling's estimate of $348.00 seems reasonable and will be awarded.

ASSIGNMENT 3: EXPERT WITNESS FEES
By this assignment, plaintiff claims the award of $200.00 per expert was inadequate. When he took the stand, each expert stated his fee, itemized as follows:

1. Porter Dowling, stump
 counting and testifying $300.00
2. Johnny Allison:
 A. Initial timber count $250.00
 B. Testifying 250.00
 C. Mileage 48.00
 _______
 TOTAL 548.00

*841
3. Printis Murphy
 A. Survey 515.00
 B. Testifying 120.00
 ______
 TOTAL 635.00

The imposition of expert witness fees to be taxed as costs lies within the trial court's sound discretion. LSA-R.S. 13:3666; Kelly v. Stringer, 422 So.2d 189 (La.App. 2d Cir.1982), writ denied 426 So.2d 177 (La.1983), and citations therein. It is well established that the court is not required to set the fee at the amount charged by the expert. Veuleman v. Sims, 382 So.2d 245 (La.App. 3d Cir.1980); State Dept. of Hwys. v. Kornman, 336 So.2d 220 (La.App. 1st Cir.1976). The trial court is also entitled to consider the relative usefulness of the experts' testimony in assessing the fees. Missouri Pac. R. Co. v. Nicholson, 460 So.2d 615 (La.App. 1st Cir.1984), writ denied 462 So.2d 185, 186 (La.1985).
In reviewing this award for abuse of discretion, we note that the expert testimony seems to have been cumulative and repetitive. For instance, both Allison and Dowling charged for counting stumps and calculating an estimate; surely this duplication was unnecessary. Murphy's survey was useful, but it depicted only one boundary line, and Murphy admitted that it was very similar to an ownership map that Mr. Evans's attorney furnished to the defense and was introduced in evidence. R.p. 96. We think the trial court was within his discretion to question the reasonableness of the stated fees and to assess the costs accordingly. This assignment does not present reversible error.

ASSIGNMENT 4: ATTORNEY FEES
By this assignment, plaintiff claims the trial court erred in awarding an inadequate attorney fee. A "reasonable" attorney fee is specifically authorized by the statute. LSA-R.S. 56:1478.1 B (now R.S. 3:4278.1 B). The reasonableness of an attorney fee is within the great discretion of the trial court. Greer v. Ouachita Coca-Cola Bottling Co., 420 So.2d 540 (La.App. 2d Cir.1982).
The proper guidelines are enunciated in the Model Rules of Professional Conduct, Rule 1.5. Without articulating every factor, we note that the plaintiff's attorney spent a day in court in addition to spending time in title work, interviewing the experts and answering interrogatories. We will not quarrel with the contention that he spent a large, though unspecified, amount of time on this case. Balanced against this, however, is the attorney's own admission that the case and issues are not especially novel or difficult. R.p. 58. We would also note the relatively small amount involved, which is practically equal to the attorney fee awarded. These factors counsel in favor of the reasonableness of the fee and we find no abuse of discretion. This assignment does not present reversible error.
For the reasons expressed, the pertinent portion of the judgment is amended to read as follows:
* * * * * *
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of petitioner, Johnny Evans, individually and as administrator of the Succession of Louis Evans and Caroline Russels Evans, and against Bedsole Wood Corporation and Jackie Bedsole, in solido, in the full sum of ONE THOUSAND, TWO HUNDRED NINETY-ONE AND 76/100 ($1,291.76) DOLLARS, with legal interest from date of judicial demand until paid.

* * * * * *
The judgment is in all other respects affirmed. Costs of appeal are assessed to appellees, Jackie Bedsole and Bedsole Wood Corporation.
AMENDED AND AFFIRMED.
NOTES
[1] Mr. Evans filed this suit individually and as succession representative of his grandparents, Louis and Carolyn Evans. He did not establish thie chain of ownership beyond his grandparents and the record does not reflect his genuine ownership interest in this tract.
[2] LSA-R.S. 56:1478.1 (now R.S. 3:4278.1) provides in part:

§ 4278.1. Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed, plus reasonable attorney's fees.
[3] LSA-R.S. 3:4278.1 C provides:

C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed. However, the provisions of this Section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.