YELVERTON, Judge.
The City Court of Wards 9, 10, and 11 of Pineville, Louisiana, found that the defendant had crossed plaintiffs’ marked property line and harvested plaintiffs’ trees without the plaintiffs’ consent. Pursuant to LSA-R.S. 3:4278.1, the court held the defendant liable for three times the value of the timber plus attorney’s fees. Among other damages, the court awarded $1,000 for loss of esthetic value and $500 to each plaintiff for mental distress. The defendants appealed. We amend in part and affirm.
FACTS
Daniel and Kathy Baglio, plaintiffs, purchased a rural home on a 2.324 acre lot in Rapides Parish. Their lot was bordered on the east by the western right-of-way of Louisiana Highway #115 (which runs north and south). When purchasing their house and lot, the Baglios also acquired a small, narrow strip of wooded land immediately across the highway. This strip measured approximately 25 feet in width from east to west and about 173 feet in length from north to south. The front of the Baglios’ house faces the wooded strip.
Daniel testified that he and his wife purchased the land across the highway because they “enjoyed being surrounded by wooded areas.” Furthermore, the Baglios wished to prevent others from building structures and improvements that could be viewed from their house.
Richard Gammenthaler, one of the defendants in this case, owns a 33 acre lot to the east of the Baglios’ narrow strip of woods. The property line between Gammenthaler’s lot and the Baglios’ strip is marked by two three-feet-high stakes with red flags. One stake is located at the northeast corner of the Baglios’ strip; the other is at the southeast corner. These two stakes are 173.2 feet apart.
Gammenthaler sold the timber on his 33 acre tract to King Ray-McCann, another defendant in this case. McCann is an experienced logger who has been involved in the logging industry since his childhood. Delivery of the timber was to take place by McCann and his logging outfit coming onto Gammenthaler’s property and harvesting the timber. Gammenthaler described his property to McCann and gave him a legal description and a plat which depicted his property boundaries. He did not, however, go out on the property and physically point out the boundaries.
On the morning of April 5, 1991, the Baglios were getting ready to go to work when they heard the noise of trees being harvested. Daniel emerged from his house and walked across the highway to discover that one of McCann’s employees had cut down a tree on his wooded strip. McCann was not on the scene at this time; however, his logging partner was there and offered Daniel $100 for the tree. Daniel accepted. He and his wife then went on to work.
The Baglios thought that the $100 tender would be the end of their problems with McCann. However, about two weeks later, Daniel discovered that McCann’s logging outfit had in fact cut several of his trees and trampled over parts of his property with a skidder — a piece of heavy machinery used in tree harvesting. When the Baglios confronted McCann, he refused to pay anything further, feeling that his $100 tender was more than generous.
The Baglios then hired Steven Templin, a professional forester, to appraise the damage that McCann’s logging operation had done to their woods. By applying current market data to his measurements and observations, Templin estimated the following damages: (1) $142.37 merchantable timber loss, (2) $105 premerchantable timber loss, (3) $500 for clean up of limbs and logging debris, (4) $150 for insecticide treatment of wounds and gashes that the logging opera *199 tion inflicted on standing trees, and (5) $250 for the appraisal itself. Templin did not quantify esthetic damages; however, he noted that the wooded strip no longer shielded the Baglios’ view of the adjacent property. Although McCann disagreed with these estimates, his testimony was never admitted as that of an expert. No other evidence controverted Templin’s appraisal.
In its Reasons for Judgment, the trial court stated that McCann’s “negligence” was the sole and proximate cause of the Baglios’ damage. Therefore, it dismissed all claims against Gammenthaler. In addition to Templin’s estimated damages, the court found McCann liable for $1,000 in loss of esthetic value, treble damages for the merchantable timber, and $1,000 in general damages. McCann’s insurer, Gulf Coast Casualty Insurance Company, was held liable in solido with McCann for all of the above damages which totalled $3,432.11 plus interest. On top of this, the trial court awarded the Baglios $1,500 in attorney’s fees and $150 for Templin’s expert witness fee.
McCann complains that the trial court erred in awarding treble damages and attorney’s fees. McCann further argues that the trial court erred by awarding $1,000 in general damages.
OPINION
LSA-R.S. 3:4278.1 A prohibits the removal or destroying of trees from the land of another without the owner’s consent. § 4278.1 B makes all willful and intentional violators of Paragraph A liable in treble damages plus reasonable attorney’s fees. However, § 4278.1 C provides that good faith violators are liable in treble damages only for those trees cut or removed “across ownership lines, marked boundary lines, or outside of designated cutting lines.... ” Finally, § 4278.1 D makes a good faith violator liable for attorney’s fees if payment is not made within 30 days of notification and demand by the legal possessor.
TREBLE DAMAGES
The trial court described McCann’s actions as “negligent.” Accordingly, his actions could not have been willful or intentional. Therefore, the Baglios are not entitled to treble damages under paragraph B of § 4278.1.
Paragraph C, however, provides for treble damages when trees are removed across “ownership lines,” and “marked boundary lines.” The jurisprudence has consistently held that treble damages are awarded under Paragraph C only when there is a “visibly designated demarcation line” between the two properties. See Brown v. Bedsole, 447 So.2d 1177 (La.App. 3d Cir.), writ denied, 450 So.2d 358 (La.1984), and cases cited therein. Therefore, the issue in Paragraph C-type eases is usually whether the ownership line between the adjacent properties was visibly designated. Jones v. Don Edwards Timber Co., Inc., 516 So.2d 1256, 1259 (La.App. 2d Cir.1987). Such a determination is a finding of fact and subject to the manifest error rule. See Id.
Since the trial court did not find McCann in bad faith, we presume that it awarded treble damage under Paragraph C. The record shows that Gammenthaler gave McCann a legal description of the 33 acres on which he was to harvest timber. Gammenthaler also showed McCann a plat which depicted Gammenthaler’s boundary lines. Two wooden stakes, each three feet tall with red flags, marked the boundary between the Baglios’ strip of land and Gammenthaler’s 33 acre tract. These two stakes were separated by a distance of 173.2 feet. Templin testified that the stakes were obvious and apparent. Finally, McCann admitted that he or one of his crew should have seen the stakes. Upon these facts, we conclude that the trial court was not clearly wrong in finding that McCann had crossed a visibly designated line of demarcation between the Baglio and Gammenthaler properties. Accordingly, treble damages are appropriate.
McCann relies on Shaffett v. Vicks, 385 So.2d 419, 421 (La.App. 1st Cir.1980). There the First Circuit held that, if the *200 adjacent properties appeared to an experienced timberman as one continuous stand of timber, that is, if an experienced timber-man could cross unknowingly from one tract to another “unless he happened to see an iron stob,” then there was no visibly designated demarcation line for purposes of awarding treble damages.
In Shaffett, however, the defendant’s boundary between the two tracts had never “been fixed.” Furthermore, the defendant’s property had never been surveyed. Finally, the disputed boundary line in Shaf-fett measured 1,332 feet, or nearly seven and one-half times the length of the Baglio boundary.
In the case before us, not only was the Baglio line fixed, but also McCann was furnished with a legal description and a plat of Gammenthaler’s 33 acres. More compelling, however, is the fact that McCann admitted that he or one of his crewman should have seen the stakes which marked the boundary. Accordingly, we find Shaffett distinguishable on its facts.
ATTORNEY’S FEES
Paragraph D of § 4278.1 provides for reasonable attorney’s fees when the good faith violator fails to pay for the wrongfully harvested timber within 30 days of notification and demand. McCann argues that his original $100 tender, which was accepted, amounted to payment within 30 days of demand. Therefore, he argues that attorney’s fees are not appropriate.
The Baglios accepted the $100 for one tree. Two weeks later the Baglios discovered that their property had suffered more harm. At that time the Baglios notified McCann and eventually filed suit. McCann refused to pay the Baglios for the additional damages. Based on these facts, we find that McCann failed to make payment within 30 days of demand and affirm the trial court’s award of attorney’s fees.
Regarding the $100 payment, however, we do find that the Baglios are in possession of the $100 that McCann tendered on April 5, 1991. In assessing damages, the trial court failed to consider this fact. Therefore, we amend the trial court’s judgment so that the Baglios’ damages are reduced by $100.
GENERAL DAMAGES
Finally, McCann argues that the trial court erred in awarding Daniel and Kathy $500 apiece in general damages. These damages were awarded for mental anguish.
The trial court is afforded much discretion in assessing general damages. La. C.C. art. 1999. An abuse of trial court discretion must be clearly demonstrated by the record before an appellate court will tamper with an award for general damages. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506, 507 (La.1978). Daniel testified that he has to wake up every morning and see that his big trees are gone and that his remaining trees are skinned up from the skidder. In Kathy’s words, the woods are now “very ugly.” She testified that “winter has come, [and] all of the small growth has died off and all you see is debris.” Kathy and Daniel both testified that the reason they acquired the narrow strip of land was so that the woods could be preserved in their natural state. Based on these facts, we cannot say that the trial court abused its discretion in its general damage award.
McCann argues that the Baglios failed to prove that they had suffered mental anguish. He relies on Evans v. B.R. Bedsole Timber Contractors, 521 So.2d 837 (La.App. 2d Cir.1988). In that case the Second Circuit held that a plaintiff may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to a physical injury directly resulting from the property damage. Id. at 839. We note, however, that in reaching this conclusion, the Evans court cited only Second Circuit authority. The Supreme Court in the Boswell case makes no mention of a psychic trauma requirement for mental distress awards. See Boswell at 507; see also Thibodeaux v. Western World Ins. Co., 391 So.2d 24, 25 (La.App. 3d Cir.1980). We note further that the court in Evans even *201 tually resolved the dispute by affirming the trial court’s factual findings. Accordingly, we are not persuaded by Evans.
DISPOSITION
For the above reasons, we amend the trial court’s damage award from $3,432.11 to $3,332.11 to reflect McCann’s $100 payment of April 5, 1991. The judgment of the trial court is otherwise affirmed at appellant’s cost.
AMENDED, AND AS AMENDED, AFFIRMED.