849 So.2d 649 (2003)
Paula C. Callison Wife of/and John Michael CALLISON
v.
LIVINGSTON TIMBER, INC., Gerald Whitehead and Charles Brown.
No. 2002 CA 1323.
Court of Appeal of Louisiana, First Circuit.
May 9, 2003.
*651 Mary Grace Knapp, Mandeville, Counsel for Plaintiffs/Appellants Paula C. Callison and John Michael Callison.
Michael J. Whitehead, Mandeville, Counsel for Defendants/Appellants Livingston Timber, Inc., Gerald Whitehead, Charles Brown And General Star Indemnity.
Before: KUHN, DOWNING and GAIDRY, JJ.
GAIDRY, J.
In this suit involving the unlawful harvesting of timber, plaintiffs, Paula and John Callison ("the Callisons"), appeal a trial court judgment in their favor, and defendants, Livingston Timber, Inc., Charles Brown, and Gerald Whitehead ("the defendants"), answer the appeal. We affirm.

FACTS AND PROCEDURAL HISTORY
On June 3, 1996, Charles Brown, a subcontractor working on behalf of Livingston Timber under the supervision of Gerald Whitehead, cut down trees on the Callisons' property while performing a logging operation on adjacent property owned by Angelo Giafaglone. The defendants admitted liability, but the parties were unable to agree on the amount due the Callisons, and this suit resulted.
*652 After a bench trial, in a judgment dated October 26, 2001, the trial court awarded the Callisons twelve hundred dollars for the value of their timber, two thousand dollars for land restoration and clean-up, four hundred dollars for the loss of a buffer zone, fifteen hundred dollars as an expert witness fee, and five thousand dollars in attorney fees, as well as court costs and legal interest from the date of judicial demand.
The Callisons appeal this judgment, raising the following assignments of error:
1. The trial court erred in failing to apply general tort law in addition to La. R.S. 3:4278.1 in awarding damages.
2. The trial court erred in finding that there were no demarcations of the Callisons' property line and that defendants acted in good faith, thereby denying the Callisons' treble damages claim.
3. The trial court erred in finding that the Callisons failed to sufficiently prove the fair market value of the trees removed by the defendants.
4. The trial court erred in awarding only five thousand dollars in attorney fees when the record clearly indicates that thirteen thousand eight hundred and forty dollars in attorney fees were reasonable under the circumstances.
The defendant answered the appeal, and alleged that the trial court erred in awarding the Callisons any attorney fees under La. R.S. 3:4278.1(D), since the defendants had attempted to settle the matter with the Callisons, but were rejected.

APPLICABILITY OF GENERAL TORT LAW
The Callisons allege that the trial court erred in failing to apply general tort law in addition to La. R.S. 3:4278.1 in awarding damages. Specifically, the Callisons allege that, under La. R.S. 3:4278.1 and La. C.C. art. 2315, they were entitled to recover treble damages for the fair market value of the trees, reforestation costs, diminished aesthetic value, loss of growth value, restoration of the land surface, general damages for trespass, mental anguish, and attorney fees.
The Callisons are correct that the application of La. R.S. 3:4278.1 does not preclude recovery for other elements of damage suffered by the owner of an immovable as a result of a trespass. La. R.S. 3:4278.1 is not an exclusive remedy; it merely standardizes damages due for timber trespass as the fair market value of the trees cut. Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477 (La.App. 1 Cir.1985).
A person injured by trespass or the fault of another is entitled to full indemnification for the damages caused. Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all of the facts and circumstances. Damages are recoverable even though the tortfeasor acts in good faith. Versai Management, Inc., 479 So.2d at 484. In addition to the amount recoverable under La. R.S. 3:4278.1, damages are recoverable, if supported by the record, for the costs of removing stumps and clearing the land after a timber trespass, Versai Management, Inc., 479 So.2d at 484; reforestation, Isdale v. Carman, 96-1435, p. 16 (La.App. 3 Cir. 4/2/97), 692 So.2d 687, 695; loss of aesthetic value/buffer zone, Howes v. Rocquin, 457 So.2d 1220, 1223 (La.App. 1 Cir. 1984); and mental anguish, Olsen v. Johnson, 99-783, p. 7 (La.App. 3 Cir. 11/3/99), 746 So.2d 740, 745.
In fact, the trial court did award the Callisons damages under the general tort lawtwo thousand dollars for land restoration and clean-up and four hundred dollars *653 for the loss of a buffer zone. The court simply did not award the costs of reforestation or mental anguish damages.
Both Mr. and Mrs. Callison testified that they wanted the property to remain in its natural state, and they asked that the court award them the costs of reforestation. Reforestation costs are not recoverable in all cases of timber trespass, but only when supported by the record. In Isdale v. Carman, 96-1435 (La.App. 3 Cir. 4/2/97), 692 So.2d 687, the court found that an award of reforestation costs was supported by the record because the evidence adduced at trial showed that the tract contained no pine seedlings or close older pines which could produce seedlings to reseed the entire tract; therefore, it was recommended that the plaintiffs burn the tract to rid it of the grass and treetops leftover from the logging, which would hinder replanting, and then have the tract replanted, since there was no means of natural regeneration.
In the instant case, the Callisons' expert arborist, Dr. Malcolm Guidry, testified that the trees that had been cut were undeniably regrowth, meaning that at some point, the timber had been harvested and natural regeneration had taken place. He recommended having the site cleared and replanted with new trees and having a sprinkler system installed to maintain the new trees. He believed it was necessary to completely clear the site because natural regeneration had already begun and there were quite a few Chinese Tallow trees, which he described as "trash trees," growing on the property. While Dr. Guidry admitted that there was a stand of new pine trees growing on the site that were six to eight feet tall, he testified that that was not representative of the entire property.
The defendants' forestry expert, Gaston Lanaux, testified that when he visited the property the week before the trial, what he saw was typical of natural regeneration with no site preparation or chemical treatment to control unwanted species. There were pine seedlings in the higher elevations that appeared to be five to six years old and ten to twelve feet tall. In the lower areas with standing water, there were some tallow trees and small water oaks. He testified that pines would not grow in these wetter areas. He said that, as a whole, this property was typical of naturally regenerated property in St. Tammany Parish.
It was not Mr. Lanaux's recommendation that the property be cleared and replanted. He would leave what had already regenerated in place, but thin things out and get rid of some of the undesirable species that grow on any site if it is not taken care of. He stated that the organic debris left on the property from the logging operation was pretty much decomposed. In addition, the unwanted species would be shaded out as the pine trees and other trees got taller. Given the Callisons' wish to have the property returned to its original "natural" state and to restore the "buffer zone" as quickly as possible, he believed that the best way to achieve this would be to allow the natural regeneration which had been going on for five to six years at the time of trial to continue. The trees already growing on the property would be twenty to twenty-five feet tall in five years. He testified that there were just as many pine trees and oak trees as there were tallow trees. He estimated the total cost of clearing the site and replanting to be, at most, four hundred to five hundred dollars an acre. Mr. Lanaux did not believe that a sprinkler system was necessary since the property was in a flood zone.
The trial court is free to accept or reject, in whole or in part, the testimony *654 of any witness. See LeBouef v. Gross, 506 So.2d 879 (La.App. 1 Cir. 4/14/87). In this case, it is clear that the court found the opinion of Mr. Lanaux that the property did not need to be completely cleared and replanted more credible than that of Dr. Guidry. Therefore, the court did not err in declining to award the Callisons the cost of reforestation.
Likewise, mental anguish damages are not recoverable in all cases of timber trespass. In Evans v. B.R. Bedsole Timber Contractors, Inc., 521 So.2d 837, 839-40 (La.App. 2 Cir.1988), the plaintiff sought mental anguish damages for the loss of timber on land owned by his family since 1878, before which time his grandfather worked the land as a slave. The plaintiff testified that several of the larger trees had been there since slavery days, so he had never cleared the tract and had no intention of doing so; as a result, he was "hurt" over the loss of the trees and "upset" that someone would just go in and cut his timber without asking. In denying his claim for mental anguish, the court stated:
Every incident of property damage is necessarily accompanied by some degree of worry and consternation over such things as possible financial loss, settlement of insurance claims, and discomfort and inconvenience. The owner of the damaged property may not recover for mental anguish unless he or she proves a psychic trauma in the nature of or similar to physical injury, directly resulting from the property damage. Elston v. Valley Electric Membership Corp., 381 So.2d 554 (La. App. 2d Cir.1980); Thompson v. Simmons, 499 So.2d 517 (La.App. 2d Cir. 1986), writ denied 501 So.2d 772 (La. 1987). This standard of proof is applicable to cases of trespass and wrongful removal of timber. Jones v. Don Edwards Timber Co., 516 So.2d 1256 (La. App. 2d Cir.1987). The property damage in this case was caused by the defendants' intentional crossing of a highly visible fence, cutting and removing the plaintiff's trees and reducing them to wood chips. Plaintiff did not prove psychic trauma as a result of this; he did not seek treatment for any mental disorders after the incident...; he merely testified that he was "upset" and "hurt." This strikes us as nothing more than normal worry associated with having one's property damaged by another.
In the instant case, Mr. Callison testified that he bought the property because it was beautiful; he stated that he fell in love with it because of the trees, the distance of the house off the road, and the creek. Mr. Callison testified that he can see the part of the property that was cut from his house, although this fact was disputed at trial. Mrs. Callison testified that she feels that they have lost the seclusion they once had because of the loss of the trees, although there remain other trees between their home and the area that was cut. This was to be their retirement home, and they had plans to build a bridge over the creek and a nature trail through the woods, but now Mr. Callison hardly goes out to the area that was cut anymore. However, Mr. Callison testified that the purpose of his purchase of the property has not been defeated; he still loves the property and wants to keep it.
Both Mr. and Mrs. Callison testified that Mr. Callison was very upset over the loss of his trees, and they attributed Mr. Callison's high blood pressure and anxiety attacks to the loss. Mrs. Callison testified that she was concerned about her husband because his stress level has increased as a result of this incident, and she feels that has affected his medical problems. However, neither of the Callisons ever saw a psychologist regarding the loss, and Mr. *655 Callison admitted that no one had ever told him that his high blood pressure and anxiety attacks were related to the trespass.
The trial court chose to make no award for the Callisons' mental anguish and emotional distress. In making an award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain and suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or lifestyle which cannot really be measured definitively in terms of money, the trial court is granted much discretion. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506, 507 (La. 1978).
Appellate review of general damage awards is limited to determining whether the trial court abused its great discretion. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review, keeping in mind that the trier of fact has had the advantage of seeing the witnesses and evaluating their testimony. Abuse of discretion by a trial court must be clearly demonstrated before an appellate court may tamper with an award of general damages. Boswell, 363 So.2d at 507.
From the evidence presented at trial, the complaints of the Callisons regarding their mental anguish and emotional distress following this incident seem more akin to the "normal worry associated with having one's property damaged" described by the court in Evans than compensable mental anguish, and therefore the trial court did not abuse its great discretion in denying the Callisons' mental anguish claim.
This assignment of error is without merit.

TREBLE DAMAGES CLAIM
Louisiana Revised Statutes 3:4278.1(C) states that good faith violators of the statute shall be liable for treble damages "if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees." The trial court denied the Callisons' demand for treble damages under La. R.S. 3:4278.1 because the court found that there were no demarcations of the property lines except the iron stakes and that there was no evidence establishing that the defendants should have known they had transgressed the property line. The court found that the defendants did not blatantly ignore the Callisons' property rights, but instead made efforts to identify the property lines by following the instructions of the adjacent property owner, Mr. Giafaglone, and therefore they were in good faith and not liable for treble damages.
According to Mr. Callison, the only boundary marker on the boundary line at issue was one steel rod alongside a fencepost. He says that on that property line, there are only corner survey stakes, and nothing along the property line itself.
Mr. Whitehead testified that his misinformation regarding the location of the property line came from Mr. Giafaglone. He testified that he did not see any reason to have a survey done since Mr. Giafaglone showed him where the boundary line was and he assumed that Mr. Giafaglone knew what he was talking about. He had no reason to doubt Mr. Giafaglone's knowledge of the location of the property line. Mr. Whitehead testified that Mr. Giafaglone showed him the wrong corner marker, and there were no boundary lines or markers whatsoever on the property line *656 itself, there was no ditch along the boundary line, no flags, and no demarcation in the size of the trees on one side of the property line or the other.
Officer St. Pierre, who conducted an investigation of Mr. Callison's complaint of timber theft, also testified that he saw no evidence of clearly marked boundary lines. In the course of his investigation, he also spoke with Mr. Whitehead, who advised that he had been told that the power line was the boundary line.
The evidence in the record does not support the conclusion that the defendants should have known that they crossed onto the Callisons' property. Since the treble damages provisions of La. R.S. 3:4278.1 are punitive in nature, they must be strictly construed; it is only when a person clearly violates its provisions that he will be assessed the severe penalty of treble damages. Howes v. Rocquin, 457 So.2d 1220, 1222 (La.App. 1 Cir. 10/9/84). The trial court did not err in denying the Callisons' claim for treble damages. This assignment of error is without merit.

FAIR MARKET VALUE OF HARVESTED TIMBER
The court also determined that the Callisons were not entitled to treble damages because they failed to sufficiently prove the fair market value of the trees that were removed by defendants. The court found that the Callisons' expert valued the living trees and the damage under a method which considered the replacement costs at the time of cutting, but recovery under the statute is limited to the fair market value of the harvested timber.
In its reasons for judgment, the court cited Olsen v. Johnson, 99-783 (La.App. 3 Cir. 11/3/99), 746 So.2d 740, wherein the court held that because the plaintiff failed to prove the fair market value of the trees, the trial court was correct in refusing to award treble damages. The Olsen court pointed out that the statute sets damages for violations at three times the fair market value of the trees. However, the plaintiff's expert arborist only outlined clean-up expenses and replacement costs, but did not give an opinion as to the fair market value of the trees removed. Since the plaintiff failed to put forth evidence as to the fair market value of the trees removed from her property, treble damages under the statute were not available. Olsen, 99-783 p. 5, 746 So.2d at 744.
The Callisons argue that their expert, Dr. Malcolm Guidry, did in fact testify as to the fair market value of the trees. However, a review of Dr. Guidry's trial testimony reveals that he testified at trial that he was not a commercial forester and was not qualified to render an opinion as to the fair market value of the timber removed from the property. He was only able to render an opinion as to the cost of restoring and reforesting the property. As such, the trial court was correct in refusing to award treble damages under La. R.S. 3:4278.1.

ATTORNEY FEES
Louisiana Revised Statutes 3:4278.1 provides for payment of a reasonable attorney fee by a good faith violator of the statute who fails to make payment within thirty days after notification and demand by the owner. La. R.S. 3:4278.1(D). In their answer, the defendants claim that the court erred in awarding attorney fees to the Callisons since they had attempted to settle this matter, but were rejected by the Callisons.
Mr. Callison testified that he called Mr. Whitehead after discovering the damage and told him what had happened and that Mr. Whitehead offered him five hundred dollars for the damage. The Callisons' *657 attorney sent a letter to Mr. Whitehead by certified mail on January 27, 1997 demanding $133,162.50, three times the cost of replacing the trees and restoring the land. A check was later tendered in the amount of five hundred dollars to the Callisons on January 16, 2001, some four years after notification and demand.[1]
Although there was a dispute over the amount due the Callisons, there was no dispute over the defendants' liability, yet the defendants failed to tender any amount of money to the Callisons within thirty days after notification and demand. The trial court later determined the fair market value of the timber removed from the property to be twelve hundred dollars, not five hundred as alleged by the defendants; however, even if the defendants had tendered the correct amount, they did not do so within thirty days as required by the statute in order to avoid payment of attorney fees. Therefore, the trial court did not err in awarding a reasonable attorney fee to the Callisons. This assignment of error by defendants is without merit.
The Callisons allege that the trial court erred in setting the attorney fee at five thousand dollars, when they presented evidence that thirteen thousand eight hundred and forty dollars would be a reasonable attorney fee.
Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. Corbello v. Iowa Production, 02-0826 (La.2/25/03), 850 So.2d 686, 2003 WL 536727.
The reasonableness of an attorney fee awarded under La. R.S. 3:4278.1 is within the great discretion of the trial court. Evans v. B.R. Bedsole Timber Contractors, Inc., 521 So.2d 837, 840 (La.App. 2d Cir.1988).13 Based upon a review of the record and the factors enumerated in Corbello, the fee awarded by the court was reasonable and we find no abuse of discretion. This assignment of error is likewise without merit.

DECREE
For the above reasons, the October 26, 2001 judgment of the trial court is affirmed. Costs of this appeal are to be shared equally by the parties.
AFFIRMED.
DOWNING and KUHN, JJ., concur.
NOTES
[1] This check was never cashed.