DOMINIC J. DISTEFANO
v.
BERRYTOWN PRODUCE, LLC AND KEMP RICHARDSON.
No. 2006 CA 2216.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
ERNEST M. FORBES, Attorney for Plaintiff/Appellant, Dominic J. Distefano.
JOHN B. EDWARDS, Attorney for Defendant/Appellee, Anthony Liuzza.
KEVIN P. LANDRENEAU, Attorney for Defendant/Appellee, Kemp Richardson.
MICHAEL R. ZSEMBIK, Attorney for Defendant/Appellee, Berrytown Produce, LLC.
Before CARTER, C.J., PETTIGREW, GAIDRY, McDONALD, and WELCH, JJ.
CARTER, C.J.
Plaintiff, Dominic Distefano, appeals a trial court judgment awarding him some but not all of the damages he sought in this timber trespass and breach of contract action. We affirm.

BACKGROUND
Mr. Distefano is the owner of a two-acre vacant tract of land along Church Street in Hammond, Louisiana. In July 2004, Berrytown Produce, LLC (Berrytown) sought to purchase a tract of land adjacent to the Distefano tract, owned by Mr. Distefano's sister, Rose Millican, to operate a produce business. A line of trees on the Distefano tract blocked the view of the Millican tract approaching it from the highway in one direction. Berrytown conditioned its purchase on obtaining Mr. Distefano's permission to remove trees from his property.
On July 8, 2004, Mr. Distefano and Berrytown entered into a written agreement authorizing Berrytown to remove all trees on the property line dividing the Distefano and Millican tracts, with the exception of a live oak tree. Berrytown hired Kemp Richardson to perform the clearing work. Mr. Richardson cut and removed approximately 12 trees from the Distefano and Millican tracts and cut a significant number of branches from the live oak tree on Mr. Distefano's tract.
Thereafter, Mr. Distefano filed this timber trespass action against Berrytown, Mr. Richardson, and Richardson Tree Service, along with Mr. Anthony Liuzza, who directed the clearing activities on behalf of Berrytown. He averred that defendants cut and removed five trees from his property and cut branches off the live oak tree without his permission. Mr. Distefano sought to recover damages under La. R.S. 3:4278.1, commonly referred to as the "timber trespass" statute, which imposes a penalty of three times the fair market value of trees on persons who unlawfully cut, fell, destroy, remove, or divert trees from a landowner's property. See Hornsby v. Bayou Jack Logging, 04-1297 (La. 5/6/05), 902 So.2d 361, 369. In the petition, Mr. Distefano also made a claim for restoration damages and damages due to the decrease in the value of his land, and further urged that defendants' cutting activities caused him to suffer non-pecuniary damages.
Mr. Distefano filed a supplemental petition in which he asserted a cause of action for breach of the July 8, 2004 contract in which Berrytown agreed to cut grass on his property as long as he owned it and the property remained undeveloped. Mr. Distefano alleged that, despite its contractual obligation to maintain his property, Berrytown refused to cut the grass on his property after the summer of 2004, and sought reimbursement for expenses he incurred to have the grass cut on two occasions in the summer of 2005.
At the conclusion of a bench trial, the court found that the agreement entered into between Mr. Distefano and Berrytown contemplated the cutting and removal of all trees on the Distefano property that had been actually cut down and denied all claims relating thereto. However, the court found that the parties clearly understood that the live oak tree was not to be cut. The court awarded Mr. Distefano the sum of $6,045.00 for the unlawful removal of branches from his live oak tree, accepting expert testimony setting the fair market value of the live oak tree at that amount. The court declined to award damages in the amount of three times the fair market value of the live oak tree pursuant to La. R.S. 3:4728.1, finding the treble damage provision inapplicable because the tree itself had not been cut down and removed, and because there was insufficient evidence of the fair market value of the limbs removed from the tree. The court did, however, award Mr. Distefano attorney's fees in the amount of $2,500.00 pursuant to La. R.S. 3:4728.1.
Judgment in the amount of $8,545.00 was entered against Berrytown, Mr. Liuzza, and Mr. Richardson in solido. The court also entered judgment in favor of Mr. Richardson on its cross-claim against Berrytown, ordering Berrytown to indemnify Mr. Richardson for all amounts he had been cast in judgment. The trial court did not enter judgment on Mr. Distefano's breach of contract claim, and expressed no opinion as to the viability of that claim in oral reasons for judgment.
Mr. Distefano filed a motion for a new trial, which was denied. He then filed this appeal, challenging the court's finding that he consented to the cutting down of five trees from his property, the denial of his treble damage claim, and the court's failure to enter an award on his breach of contract claim.

DISCUSSION
In his first assignment of error, Mr. Distefano insists that the trial court erred in finding that he consented to the removal of five trees from his property that were located near, but not exactly on, the common property line. The record reflects that in 2004, Ronnie Henderson, Berrytown's general manager, began negotiations to purchase a two-acre tract owned by Rose Millican, Mr. Distefano's sister. There was a line of trees on Mr. Distefano's adjoining property blocking the view of the Millican tract as seen from one direction. The sale was conditioned on Ms. Millican obtaining Mr. Distefano's permission to remove trees from his property.
Frank Cali, the real estate agent marketing the Millican tract and Mr. Distefano's first cousin, spoke with Mr. Distefano regarding the extent of the clearing. Thereafter, Mr. Cali went to an attorney to have an agreement drafted in accordance with the conversation he had with Mr. Distefano.
On July 8, 2004, Mr. Distefano and Berrytown executed a written agreement in which Berrytown agreed to remove all the debris from Mr. Distefano's property, "including all trees on the dividing property line" between the Distefano and Millican tracts, "with the exception of the live oak tree located on or near the property line." Berrytown also agreed to cut the grass on Mr. Distefano's property all the way to the railroad tract in the back of the property for as long as he owned the tract and it remained undeveloped.
According to Mr. Cali, the property was surveyed to determine the property line's location before the clearing began. Mr. Cali attested that there were no trees on the property line itself, but there were trees close to the property line that hung over the property line, and those were the trees Berrytown wished to have removed.
Berrytown hired Mr. Richardson to clear the properties. It sent Mr. Liuzza to direct Mr. Richardson to cut down all trees along the common property line. Mr. Liuzza testified that he instructed Mr. Richardson to cut all of the trees on Mr. Distefano's property and to cut some of the dead limbs off the oak tree. Both Mr. Henderson and Mr. Liuzza acknowledged that Mr. Distefano had not consented to the removal of limbs from the oak tree.
Mr. Richardson cleared the properties in July of 2004. He cut down approximately twelve trees and removed debris and bushes from the properties. Mr. Richardson confirmed that he trimmed dead limbs from two oak trees located on the Distefano and Millican tracts.
Pictures of the property before and after the tree removal were offered into evidence. Mr. Distefano insisted he only agreed to the removal of trees on the common property line, and offered pictures in support of his claim that the trees actually removed were located 25-30 feet from the property line. Mr. Distefano contends that the parties never contemplated the removal of any trees not located exactly on the common property line. Other witnesses, however, stated unequivocally that the removal of the subject trees was clearly contemplated by the agreement entered into between Mr. Distefano and Berrytown.
It is well established that an appellate court must accord deference to a trial court's factual findings on the intent of the contracting parties, where those findings are reasonable and adequately supported by credible evidence. Claitor v. Delahoussaye, 02-1632 (La. App. 1st Cir. 5/28/03), 858 So.2d 469, 475, writ denied, 03-1820 (La. 10/17/03), 855 So.2d 764. The trial court ruled that the parties clearly contemplated cutting all of the trees that were in fact cut down. This finding is an entirely reasonable one based on the testimony and photographs offered into evidence, and may not be disturbed by this court. Accordingly, we find no error in the trial court's dismissal of all claims for damages associated with the cutting of the five trees near the property line.
In his second and third assignments of error, Mr. Distefano contends that the trial court erred in absolving Mr. Liuzza and Mr. Richardson from liability in this case. Specifically, he contends that the contract could not serve as a basis to find these defendants bore no liability for the five trees cut and removed from his property because they were not parties to the contract. He also submits that Mr. Richardson could not insulate himself from liability by merely relying on what others told him.
We find no merit to these assertions. Clearly, the court held that Mr. Distefano consented to the cutting of the five trees located near the property line, and therefore no trespass occurred with respect to those trees for which any of the defendants could be held liable. Moreover, the judgment plainly casts all defendants liable in solido for the damage done to the oak tree.
In his fourth assignment of error, Mr. Distefano contends that the trial court should have ordered the defendants to pay treble damages pursuant to La. R.S. 3:4278.1.
Louisiana Revised Statute 3:4278.1 imposes a penalty of three times the fair market value of the trees on those persons who unlawfully cut, fell, destroy, remove, or divert trees from a landowner's property without the landowner's consent as follows:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
B. Whoever willfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney's fees.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees.
D. If a good faith violator of Subsection A fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner or legal possessor, the violator shall also be responsible for the reasonable attorney fees of the owner or legal possessor.
We do not interpret La. R.S. 3:4278.1 to authorize treble damages under the facts of this case. Accordingly, we find no en-or in the trial court's conclusion that La. R.S. 3:4278.1 is inapplicable.[1]
In his last assignment of error, Mr. Distefano contends the court should have found Berrytown breached the contract by failing to cut the grass on his property after 2004, relying on the July 8, 2004 written agreement in which Berrytown stated that it would "maintain the bushhogging or grass cutting" of the Distefano tract as long as Mr. Distefano owned the property and it remained undeveloped. The record reflects that Berrytown cut Mr. Distefano's property twice in the summer of 2004, but did not cut the grass thereafter. Mr. Distefano offered uncontradicted evidence that he paid his brother $400.00 to cut the grass on his property in June and July of 2005, and only sought to recover this amount from Berrytown.
We agree that the trial court erred in not finding Berrytown in breach of its contractual agreement to cut the grass on Mr. Distefano's property, and we enter judgment against Berrytown in the amount of $400.00.

CONCLUSION
For the foregoing reasons, the judgment is entered in favor of Dominic Distefano against Berrytown Produce, LLC in the amount of $400.00. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally to Dominic J. Distefano and Berrytown Produce, LLC.
RENDERED AND AFFIRMED.
WELCH, J., AGGREEING IN PART AND DISSENTING IN PART.
I agree with the majority opinion with respect to the first three assignments of error. However, I believe that La. R.S. 3:4278.1 mandates the imposition of treble damages in this case, and therefore, I respectfully dissent.
In awarding attorney fees pursuant to Subsection D of La. R.S. 3:4278.1, the trial court obviously found as a fact that defendants were aware their actions in cutting the branches off of the oak tree were without Mr. Distefano's consent, and thus, they were good-faith violators of Subsection A of that provision. This finding has not been challenged on appeal. The only issue before this court is whether defendants, who have been deemed to be good-faith violators of La. R.S. 3:4278.1, are liable for treble damages under Subsection C of La. R.S. 3:4278.1.
The trial court ruled that an award of treble damages was not authorized in this case for two reasons. First, the court found that the treble damage provision applied only to those situations were a tree had actually been cut down and removed from the owner's property. However, there is no such limiting language in the text of La. R.S. 3:4278.1(C): liability for treble damages is triggered thereunder when trees are "cut, felled, destroyed, removed, or diverted" for sale or use without the owner's permission. (Emphasis added). It is settled that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La. C.C. art. 9. The cutting of Mr. Distefano's oak tree, under circumstances indicating that defendants were aware their actions were without Mr. Distefano's permission, triggered the applicability of the treble damage provision.
Second, the trial court construed La. R.S. 3:4278.1 to authorize only an award of three times the fair market value of the limbs removed from the tree and found that because Mr. Distefano did not offer evidence as to the timber value of the limbs cut off of the tree, he could not recover treble damages. Again, I must disagree with this limited reading of La. R.S. 3:4278.1.
Louisiana Revised Statue 3:4278.1 sets the standard for damages due for a timber trespass as the fair market value of the trees cut. Callison v. Livingston Timber, Inc., XXXX-XXXX, p. 3 (La. App. 1st Cir. 5/9/03), 849 So.2d 649, 652. The statute authorizes recovery of three times the fair market value of the tree that is cut or destroyed. It does not limit recovery to three times the fair market value of the wood cut off of a standing tree. Moreover, the statute does not set forth any single method of determining the economic value of a tree. In this case, plaintiff offered expert testimony to establish the fair market value of the oak tree damaged by defendants.[1]
James Culpepper, a licensed arborist with a degree in forestry, testified that a large number of live limbs had been removed from Mr. Distefano's oak tree and opined that the tree had been excessively pruned. He attested that excessive pruning causes reduced leaf surface and energy deficits for a tree. Mr. Culpepper stated that whether the oak tree can overcome the stress placed on it by the excessive pruning is dependent on a number of factors, adding that it would take ten years, at a minimum, before the tree began to re-grow. Because the tree was still standing, Mr. Culpepper utilized a 50% loss figure in determining the fair market value of the oak tree after the excessive pruning rather than a 100% loss factor.
Over objection of opposing counsel as to his qualification and methodology, Mr. Culpepper was allowed by the court to testify as to the economic value of the oak tree utilizing the "Trunk Formula Method." The trunk formula method considers a number of factors in assessing the economic value of a tree that has been cut or damaged including the location, condition, species, and the size of the tree. This method, Mr. Culpepper explained, is the most widely used method in the industry to set the fair market value of a large sized tree, and looks at the value of a tree in a landscape situation as opposed to a 40-acre wooded forest. Utilizing the trunk value method and factoring in a 50% loss, Mr. Culpepper estimated the fair market value of the live oak tree to be $6,045.00.
Because the trial court was presented with evidence from which it could make a determination as to the fair market value of the live oak tree, it should have awarded Mr. Distefano treble damages for the unlawful cutting of his oak tree in the amount of three times the fair market value of the tree. Accordingly, I believe that Mr. Distefano is entitled to recover treble damages in the amount of $18,135.00.
NOTES
[1] The trial court awarded Mr. Distefano attorney's fees pursuant to La. R.S. 3:4278.1. However, defendants did not appeal that award. Likewise, because defendants have not appealed, the issue of whether the trial court erred in awarding any damages with respect to the oak tree, which defendants raise in their brief, is not before the court. See MB Industries, LLC v. CAN Ins. Co., 06-1084 (La. App. 1st Cir. 3/23/07), 960 So.2d 144, 148 n.1, writs denied, 07-1186 (La. 9/21/07), 964 So.2d 335; 07-1191 (La. 9/21/07), 964 So.2d 337; 07-1217 (La. 9/21/07), 964 So.2d 340.
[1] It is true that in some instances, courts have construed the term "fair market value" as it is utilized in La. R.S. 3:4278.1 as the "amount a purchaser would pay for standing timber to be cut and removed." McConnico v. Red Oak Timber Co., 36,985, p. 11 (La. App. 2nd Cir. 5/16/03), 847 So.2d 191, 198; Otwell v. Diversified Timber Services, Inc., 2004-924, p. 9 (La. App. 3rd Cir. 1/26/05), 896 So.2d 222, 228, writ denied, XXXX-XXXX (La. 4/22/05), 899 So. 575. Unlike the instant case, the trees in the cited cases had been harvested and sold for their timber value, and the plaintiffs' experts testified as to the timber value of the property removed from their property. This case is also distinguishable from Harkness v. Porter, 521 So.2d 832 (La. App. 2nd Cir.), writ denied, 523 So.2d 1323 (La. 1988), wherein the court awarded a plaintiff the timber value of limbs removed from a tree in accordance with expert testimony setting the fair market value of the wood removed from the tree.