WELCH, J.
Un this boundary dispute, the defendant/record owner of certain immovable property, CJS Development, L.L.C. (“CJS”), and the third party defendants/former record owners of that same property, Leo Summers as successor to *12 Thelma Helen LeSage Summers[1], Betty Rose LeSage Thompson and Tonya Faye LeSage as successor to Alice Faye Bennett LeSage[2] (collectively “the LeSage defendants”), appeal a judgment in favor of the plaintiffs/owners of adjoining immovable property, Betsy Hooper and John Hooper (collectively “the Hoopers”), declaring that the Hoopers acquired ownership of a portion of CJS’s property by thirty-year acquisitive prescription and awarding damages to the Hoopers for CJS’s removal of trees from their property. The Hoopers have answered the appeal seeking treble damages. Finding no error in the judgment of the trial court, we affirm the judgment of the trial court and deny the answer to appeal.
FACTUAL AND PROCEDURAL HISTORY
By act of sale dated April 8,1961, Henry W. Hooper, plaintiff John Hooper’s father, acquired a tract of immovable property in East Baton Rouge Parish from Laurence L. Summers.[3] By act of sale dated July 12, 1965, Betsy Hooper (then “Betsy His-song”) acquired a tract of immovable property in East Baton Rouge Parish adjacent to the properly owned by Henry Hooper.[4] Betsy Hooper has owned and lived on that property continuously since that date. Eventually, Betsy Hooper married John Hooper. Following the death of Henry Hooper, Henry Hooper’s tract of immovable property was conveyed by the other |sheirs of Henry Hooper to the Hoopers by act of cash sale dated June 1992.[5] Together, these two properties comprise the Hooper property.
By act of cash sale dated September 1, 2006, CJS acquired from the LeSage defendants 52.37 acres of immovable property in East Baton Rouge Parish.[6] This property is adjacent to and contiguous with the Hooper property as well as property owned by Alvin McCloud, Michael Mannino, and Darryl Cleveland.[7] CJS, through its members, Calvin Blount and Steve Cantu purchased the property from the LeSage defendants with the intent to develop it as Wisteria Lakes Subdivision.
Shortly after purchasing the property, a dispute arose between CJS and the Hoo-pers regarding the ownership of approximately ⅜ of an acre that was located between the record boundary of the Hooper property and an old fence line, which the Hoopers believed was the boundary between their property and the LeSage property (now owned by CJS). Apparently, the old fence line had been constructed around 1931 by Philo and Pinkie LeSage in order to keep cattle on the LeSage property and had been constructed in a straight line along (or close to) the entire boundary *13 of the LeSage property, except at the boundary of what is now the Hooper property, where the fence was constructed well inside the boundary line. Thus, the Hoo-pers’ claimed that the old fence line was the boundary between the two properties.[8]
Notwithstanding the boundary dispute, CJS began clearing trees from the property. Therefore, on December 15, 2006, the Hoopers filed a petition for | ¿injunction and to stop the development of the subdivision against CJS, Mr. Blunt, Mr. Cantu, and Wisteria Lakes Subdivision.[9] In the petition, the Hoopers alleged that although CJS asserted ownership of the disputed area by virtue of a title presented to them at the purchase of the property, they had acquired ownership of the property by virtue of acquisitive prescription, having corporeally possessed the property for more than thirty years in accordance with La. C.C. art. 3486, et seq. Accordingly, the Hoopers requested a temporary restraining order and thereafter, an injunction to enjoin the defendants from any further action on the disputed area.[10]
In response, CJS filed a third-party demand for warranty of title against the LeSage defendants, seeking, in the event of an eviction from the disputed area of the property by the Hoopers, to recover the purchase price (or a portion thereof), as well as to recover any other damages sustained by CJS. Thereafter, CJS recommenced clearing trees from the property. The Hoopers then filed an amended petition, seeking damages for the removal of trees from the property in the amount of three times the market value of the trees, ie., treble damages.
Following a bench trial, the trial court rendered judgment in favor of the Hoopers and against CJS, finding that the Hoopers had proven their claim of thirty-year acquisitive prescription to the disputed area. Additionally, the trial court rendered judgment in favor of the Hoopers and against CJS, in the amount of $12,500.00, plus judicial interest from the date of demand, representing damages caused to the Hoo-pers’ property (ie., the removal of trees) by CJS. Lastly, the trial court rendered judgment dismissing the third-party demand of CJS against the LeSage defendants.
IsA judgment in accordance with the trial court’s ruling was signed on May 3, 2012, and it is from this judgment that CJS and the LeSage defendants have appealed. On appeal, CJS contends that the trial court erred in: (1) finding that the Hoopers had carried their burden of proving continuous, uninterrupted, peaceable, public, and unequivocal adverse possession of land outside the survey boundaries described in their deeds (ie., the disputed area) for any period of thirty years; (2) finding that CJS and its predecessors in title had not possessed the disputed area with just title for ten years prior to the action being filed; (3) finding that the trees removed from the disputed property had a value separate and apart from the value of the immovable property on which *14 the trees were located or their value as timber; (4) permitting an urban forester to offer opinion evidence on the “evaluation of trees”; and (5) dismissing CJS’s third-party demand against the LeSage defendants where the sale document on which it was based was introduced into evidence.
On appeal, the LeSage defendants contend that the trial court erred in finding that the Hoopers acquired any portion of the property sold by the LeSage defendants to CJS by thirty-year acquisitive prescription. Additionally, the Hoopers have answered the appeal seeking an award of treble damages and to cast individual defendants, Mr. Blount and Mr. Cantu, solidarily liable with CJS for all damages.
LAW AND DISCUSSION

Boundary Action and Acquisitive Prescription

In a boundary action, the court shall render a judgment fixing the boundary between contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 3693. The boundary shall be fixed according to ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. La. C.C. art. 792. In a boundary action, “[a] party that proves ownership by an unbroken chain of | fitransfers from a previous owner or by virtue from a more ancient title from a common author prevails, unless the adverse party proves ownership by acquisitive prescription.” King’s Farm, Inc. v. Concordia Parish Police Jury, 97-1056 (La.App. 3rd Cir.3/6/98), 709 So.2d 953, 956, unit denied, 98-1450 (La.9/18/98), 724 So.2d 748, (quoting Yiannopoulos, Property § 268, 2 Louisiana Civil Law Treatise 527 (3rd ed.1991)). Thus, ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Secret Cove, L.L.C. v. Thomas, 2002-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, 1015, writ denied, 2004-0447 (La.4/2/04), 869 So.2d 889.
Under the codal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. Id. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. Thirty years of corporeal possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually corporeally possessed. Secret Cove, L.L.C., 862 So.2d at 1015; see also La. C.C. arts. 3424, 3426, 3476, 3486, 3487, and 3488.
For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed. La. C.C. art. 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. Secret Cove, L.L.C., 862 So.2d at 1015. According to well-settled Louisiana jurisprudence, an enclosure is any natural or artificial boundary. Id., citing La. C.C. art. 3426, comment (d). The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving 17notice to the world of the extent of possession exercised. Secret Cove, L.L.C., 862 So.2d at 1015.
*15 One is presumed to intend to possess as owner unless he began to possess in the name of and for another. La. C.C. art. 3427. The intent to possess as owner may be inferred from all of the surrounding facts and circumstances. Secret Cove, L.L.C., 862 So.2d at 1015.
Under La. C.C. art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds. Such a title holder may attain the thirty-year possessory period — which is necessary to perfect prescriptive title in the absence of good faith and just title — by “tacking” on to the possession of his ancestor in title. La. C.C. arts. 794 and 3442; Secret Cove, L.L.C., 862 So.2d at 1015-1016. Under La. C.C. art. 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under this article, the juridical link, or written instrument that passes to the possessor from his ancestor-in-title need not encompass or include the particular property to which the possessor claims prescriptive title. Secret Cove, L.L.C., 862 So.2d at 1016.
Whether a party has possessed property for purposes of thirty-year acquisitive prescription is a factual determination by the trial court and will not be disturbed on appeal unless it is clearly wrong. Id. Additionally, boundary location is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error. Id. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact’s findings demand great deference and are virtually never manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of Rfact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. It is only when documents or objective evidence so contradict the witness’s story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit the witness’s story, that the court of appeal may find manifest error or clear wrongness, even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-845. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 845.
In this case, the trial court provided written reasons for judgment as follows:
The court could reiterate verbatim the testimonial and documentary evidence that was presented at trial, but more practical is to conclude what the evidence has revealed to the court. The court in review of all the evidence presented finds that the plaintiffs have proven by a preponderance of the evidence actual, clear and open possession of the area in dispute for greater than 30 years. There is an abundance of evidence to conclude that the plaintiff[s’] possession was both continuous and interrupted [sic ] beyond the required 30-year acquisitive prescription period required by law to acquire ownership. The Hooper[s] openly possessed the property to the tree/fence line since 1965.... There was no evidence of any substance to rebut this established fact.
[[Image here]]
The court concludes that the plaintiffs have acquired the strip of land in dispute by acquisitive prescription.
*16 Both CJS and the LeSage defendants contend that the trial court erred in finding that the Hoopers acquired any portion of the property sold by the LeSage defendants to CJS by thirty-year acquisitive prescription. Specifically, both argue that the Hoopers did not carry their burden of proving continuous, uninterrupted, peaceable, public, and unequivocal adverse possession of land outside the survey boundaries described in their deeds for any period of thirty years.
|sBased on our review of the evidence in this case, we find that the trial court’s factual finding that the Hoopers possessed the disputed area up to the old fence line as owners for thirty years to be reasonably supported by the testimony of Betsy Hooper, John Hooper, Michael Hooper, Casey McCoun, Alvin McCloud, Terry Summers, and Michael Mannino, and it is not clearly wrong. The testimony established that Betsy Hooper has lived on the Hooper property (or a part thereof) since 1965. The Hoopers and all the owners of neighboring property have always considered the old fence line to be the boundary between the Hooper property (and former Summers property) and the LeSage property. The testimony also established that the Hoopers, including Henry Hooper, continuously possessed and exercised rights of possession over the property to the fence line. The evidence established that Betsy Hooper considered the area in dispute to be her “backyard,” that her children played in the “backyard” (the area in dispute) up to the fence line, that family gatherings and volleyball games were held in the area in dispute, and that there was a clothesline in the disputed area. The testimony further established that the Hoopers maintained the Hooper property and the property up to the fence line by planting a garden and trees in the disputed area and mowing the grass up to the fence line. Thus, we must conclude that the evidence supports the trial court’s conclusion that the nature and extent of that possession satisfied the requirements of acquisitive prescription.[11]
We also agree with the trial court that neither CJS nor the LeSage defendants produced any competent evidence to contradict the evidence offered by the Hoo-pers or to establish that the old fence line was not considered the boundary between the LeSage and Hooper property. CJS and the LeSage defendants point to |1t1a 1994 survey commissioned and recorded by the Hoopers, which depicted the boundary between the Hooper property and the LeSage property at the record boundary. However, Betsy Hooper testified that the purpose of that survey was to re-subdivide the Hooper property by cutting out a tract of land, which was on the opposite side of the Hooper property as the area in dispute, to be conveyed to their daughter for the construction of a home.
CJS and the LeSage defendants also point to two inquiries by John Hooper— one to Mr. Leo Summers (married to one of the LeSage defendants) and one to Mr. Brandon Rogillio (the real estate agent for the sale of the LeSage property to CJS)— wherein John Hooper inquired about purchasing some of the LeSage property. However, these inquiries were not ac-knowledgements that the disputed area was not possessed as owner by the Hoo-pers, but merely an expression of interest in purchasing an undesignated portion of the LeSage property. Accordingly, we *17 find no manifest error in the trial court’s judgment on acquisitive prescription and the boundary fixed between the Hooper property and the property of CJS.

Damages

In addition to finding that the Hoopers proved ownership of the disputed area by thirty-year acquisitive prescription, the trial court also awarded damages for the fair market value of the trees that CJS removed from the area in dispute. Specifically, with regard to damages, the trial court’s reasons for judgment provide:
The question then becomes to what extent the plaintiffs were damaged as a result of the defendants!’] removal of trees on the strip of land that was in dispute. Evidence suggests that the defendants were notified sometime in 2006 of a potential dispute over the boundary line and that in December of 2006[,] the defendants began removing trees from the area. There is a dispute as to how much the defendants] actually [k]new of the boundary dispute prior to the tree removals in December 2006 and February 2007. There is sufficient evidence to support the conclusion that the defendant’s had Inknowledge of the dispute over the boundary prior to the removal of trees in February 2007. There should have been a halt to all tree removal sometime after receiving notice in December of 2006. The action taken by the defendants up until December 2006 was done with them believing that they had the right to do so. Up to that point[,] they relied upon what a survey revealed.
The court concludes that the plaintiffs ... have suffered damages due to the removal of trees inside of the area in dispute. The court has considered the testimony of Dr. Malcolm Guidry, the plaintiffs’] forestry expert in determining a fair and just award to compensate them for their los[s]. After review of the testimony and law, the court believes that the fair market value of the plaintiffs’] loss amounts to the sum of $12,500.00. The defendants shall pay unto the plaintiffs the sum of damages plus judicial interest from the date of demand.
CJS first contends that the trial court erred in awarding damages because the trees did not have a value separate and apart from the value of the immovable property on which they were located or their value as timber. CJS argues that in Louisiana, all property is either movable or immovable. See La. C.C. art. 475. CJS further argues that standing trees are im-movables, and, when owned by the owner of the land on which they sit, are considered component parts of the land, whereas cut trees, or logs, are immovables. See La. C.C. arts. 468 and 464. Thus, CJS contends that standing trees only have value in two ways — either they enhance the value of the land on which they sit or they have potential value for sale as timber, and in this case, there was no proof of either.
However, the trial court’s reasons for judgment reflect that it was awarding damages for the removal or destruction of trees that were on the Hooper side of the fence line in the area in dispute after this boundary action was filed by the Hoopers. The trial court found that although CJS had been in good faith in initially tearing down trees in December 2006 (even though they may have been aware of a potential dispute over the boundary line), at the time they re-commenced removing trees in February 2007, CJS had actual knowledge of the boundary dispute, and were thus liable for the damage they caused. Thus, it appears the damages awarded by the trial court were based on general tort law, ie., the tort of trespass, |12and La. R.S. *18 3:4278.1.[12] See La. C.C. art. 2315; Callison v. Livingston Timber, Inc., 2002-1323 (La.App. 1st Cir.5/9/03), 849 So.2d 649, 652.
A person injured by trespass or the fault of another is entitled to full indemnification for the damages caused. Callison, 849 So.2d at 652. Where there is a legal right to recovery, but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances. Id. Damages are recoverable even though the tortfeasor acts in good faith. Id.
Louisiana Revised Statutes 3:4278.1 provides, in part:
A.(1) It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
(2) It shall be unlawful for any co-owner or co-heir to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on co-owned land, without the consent of, or in accordance with the direction of, the other co-owners or coheirs, or in accordance with specific terms of a legal contract or agreement. The provisions of this Paragraph shall not apply to the sale of an undivided timber interest pursuant to R.S, 3:4278.2.
B. Whoever willfully and intentionally violates the provisions of Subsection A of this Section shall be liable to the owner, co-owner, co-heir, or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, plus reasonable attorney fees and costs.
C. Whoever violates the provisions of Subsection A of this Section in good faith shall be liable to the owner, co-owner, co-heir, or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without | isthe consent or direction of the owner, co-owner, co-heir, or legal possessor of the trees.
D. If a good faith violator of Subsection A of this Section fails to make payment under the requirements of this Section within thirty days after notification and demand by the owner, co-owner, co-heir, or legal possessor, the violator shall also be responsible for the reasonable attorney fees and costs of the owner, co-owner, co-heir, or legal possessor.
In addition to the amount recoverable under La. R.S. 3:4278.1, damages are recoverable, if supported by the record, for the costs of removing stumps and clearing the land after a timber trespass, reforestation, loss of aesthetic value/buffer zone, *19 and mental anguish. Callison, 849 So.2d at 652.
Appellate review of general damage awards is limited to determining whether the trial court abused its great discretion. Id. at 655. The adequacy or inadequacy of an award should be determined on the basis of the facts and circumstances peculiar to the case under review. Id. Abuse of discretion must be clearly demonstrated before an appellate court may tamper with an award of damages. Id.
Herein, after considering the testimony of Dr. Malcolm Guidry, the plaintiffs’ expert in the field of urban forestry and the evaluation of trees, the trial court determined that the fair and just award to the Hoopers to compensate them for their loss was $12,500.00. CJS contends that the trial court erred in permitting Dr. Malcolm Guidry to offer expert opinion testimony regarding the value of the trees removed from the disputed area and in relying on his testimony in awarding damages to the Hoopers.
It is well settled that a trial court is accorded broad discretion in determining whether expert opinion evidence should be held admissible and its decision will not be overturned absent an abuse of discretion. Williams v. Our Lady of the Lake Hospital, Inc., 2009-0267 (La.App. 1st Cir.9/11/09), 22 So.Bd 997, 1000. Furthermore, the trial court is free to accept or reject in whole or in part the testimony of any witness. Callison, 849 So.2d at 653-654.
According to Dr. Guidry’s testimony, he has a bachelor’s degree in general agriculture, a master’s degree in horticultural plant science, a master’s degree in urban forestry, and a doctorate of education in plant sciences, and he has previously been accepted as an expert in Louisiana courts on several occasions. Dr. Guidry identified 20 trees that were lost or destroyed from the area in dispute or Hooper property by CJS.[13] Dr. Guidry opined that the trees had an average value of $1,800.00 each.
Based on Dr. Guidry’s qualifications and the evidence in the record, we cannot say that the trial court abused its vast discretion in allowing Dr. Guidry to offer expert opinion evidence on urban forestry and on the value of the destroyed trees or in relying on Dr. Guidry’s testimony to determine the appropriate amount of damages sustained by the Hoopers. From the testimony of the Hoopers and Dr. Guidry, as well as the photographic evidence offered by the Hoopers, the Hoopers lost a significant number of trees as a result of CJS’s actions and further, the destruction or loss of those trees from their property (the area in dispute) caused the Hoopers aesthetic loss in that there are no trees along their boundary or no buffer zone between their property and new homes being constructed adjacent to their property in Wisteria Lakes Subdivision. Accordingly, we cannot say that the trial court’s award of damages in the amount of $12,500.00 was an abuse of its vast discretion.
In the Hoopers’ answer to appeal, they contend that pursuant to La. R.S. 3:4278.1, the trial court should have awarded them treble damages for their loss. As set forth above, La. R.S. 3:4278.1 provides for an award of treble damages for 11F,willfully and intentionally cutting or *20 destroying the trees belonging to another, or for good faith violators, “if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner ... or legal possessor of the trees.” La. R.S. 3:4278.1(C). The trial court denied the Hoopers’ demand for treble damages,[14] and in doing so, implicity concluded either that CJS’s actions were not willful or intentional or that the evidence did not support the conclusion that CJS should have known that it crossed onto the Hoopers property. Notably, the trial court described CJS’s behavior warranting the award of damages as “negligent removal of trees and brush from the area in dispute after having been placed on actual notice of the plaintiff[s’] claims to the property where the trees and bushes were removed.” Since the treble damages provisions of La. R.S. 3:4278.1 are punitive in nature, they must be strictly construed; it is only when a party clearly violates its provisions that the party will be assessed the severe penalty of treble damages. Callison, 849 So.2d at 656. Accordingly, we find no error in the trial court’s denial of the Hoopers’ claim for treble damages.
The Hoopers also contend that the trial court erred in not holding Mr. Blount and Mr. Cantu personally liable for their damages. Mr. Blount and Mr. Cantu are members of CJS. CJS is a limited liability company, which is a separate legal entity from its members. See Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 2011-2254 (La.App. 1st Cir.7/10/12), 97 So.3d 595, 598. The evidence in the record revealed that all actions taken by Mr. Blount and Mr. Cantu with regard to the Hoopers’ property or the area in dispute were in their capacities as members or agents of CJS. Hence, they are not personally liable for any debt, | ^obligation or liability of CJS. See La. R.S. 12:1320(A) and (B). Additionally, no evidence was offered by the plaintiffs to establish that either Mr. Blount or Mr. Cantu engaged in or committed fraudulent or ultra vires acts or otherwise acted in a manner so as to warrant piercing the corporate veil of CJS. See La. R.S. 12:1320(D); Charming Charlie, Inc., 97 So.3d at 598; Riggins v. Dixie Shoring Company, Inc., 590 So.2d 1164, 1168-69 (La.1991). Accordingly, the trial court properly declined to cast the individual defendants, Mr. Blount and Mr. Cantu, solidarity liable with CJS for all damages.

Third-Party Demand

As previously set forth, CJS filed a third-party demand asserting a warranty-of-title claim against the LeSage defendants, seeking to recover a portion of the purchase price for the property it did not receive, as well as to recover any other damages sustained by CJS. The trial court denied and dismissed CJS’s third-party demand for the following reasons:
The court awarded damages to the plaintiffs] for CJS’s negligent removal of trees and brush from the area in dispute after having been placed on actual notice of the plaintiffs’] claims to the property where the trees and bushes were removed. The damages awarded by this court had nothing to do with CJS’s reliance upon warranty of title. In addition, the [c]ourt finds that [the] defendant failed to submit sufficient evi *21 dence at the trial showing liability on behalf of the third-party defendant.
In CJS’s last assignment of error, it contends that the trial court erred in dismissing its third-party demand because the sale document on which the sale was based was introduced into evidence, and that if CJS did not get title to all of the property it purchased pursuant to that sale, it was entitled to reimbursement from the LeSage defendants for the value of the property it did not receive. CJS claims that it paid $16,000.00 per acre for the LeSage property, and that based upon that price, it should receive $4,000.00 for the ⅛ acre in dispute that it did not receive. Additionally, CJS claims that since the purchase of the property included the trees, 117to the extent the trees had a separate value, it was also entitled to reimbursement from the LeSage defendants for that value, ie., the sum of damages awarded in favor of the Hoopers.
According to the act of cash sale between CJS and the LeSage defendants, the LeSage defendants:
declared that for and in consideration of the price and sum of Eight Hundred Thirty-Seven Thousand Nine Hundred Twenty and 00/100 ($887,920.00), receipt of which is acknowledged by [the LeS-age defendants, the LeSage defendants] hereby sells and delivers with full warranty of title and subrogation to all rights and actions of warranty [the LeS-age defendants] may have unto:
[[Image here]]
[CJS] ... the following described property the possession and delivery of which [CJS] acknowledges[.]
The act of cash sale then sets forth the legal description for the 52.37 acre tract of land known as the LeSage property.
In the event there is a shortage or surplus of land that the seller was obligated to deliver to the buyer, the rights of the parties are governed by La. C.C. arts. 2492 and 2494. Louisiana Civil Code article 2492 provides:
If the sale of an immovable has been made with indication of the extent of the premises at the rate of so much per measure, but the seller is unable to deliver the full extent specified in the contract, the price must be proportionately reduced.
If the extent delivered by the seller is greater than that specified in the contract, the buyer must pay to the seller a proportionate supplement of the price. The buyer may recede from the sale when the actual extent of the immovable sold exceeds by more than one twentieth the extent specified in the contract.
Additionally, La. C.C. art. 2494 provides:
When the sale of an immovable has been made with indication of the extent of the premises, but for a lump price, the expression of the measure does not give the seller the right to a proportionate increase of the price, nor does it give the buyer the right to a proportionate diminution of the price, unless there is a surplus, or a shortage, of more than one twentieth of the extent specified in the act of sale.
When the surplus is such as to give the seller the right to an increase of the price the buyer has the option either to pay that increase or to recede from the contract.
[ 1sAlthough CJS claims that it paid $16,000.00 per acre for the LeSage property, the act of cash sale between the LeS-age defendants and CJS does not specify a price per measure. Rather, the act of sale indicates the extent of the premises for the lump sum of $837,920.00. Therefore, CJS’s rights with respect to the LeSage *22 defendants are governed by La. C.C. art. 2494.
According to the record, the disputed area comprised of ⅜ of an acre out of a sale of 52.37 acres. Since the shortage of property conveyed to CJS by the LeSage defendants as a result of acquisitive prescription by the Hoopers was not more than one twentieth of the extent specified in the sale, CJS was not entitled to a reduction in the purchase price.[15] See La.C.C. art 2494. To the extent that CJS claims that it should be reimbursed for the value of trees, ie., the damages it was ordered to pay the Hoopers for the removal of the trees, the trial court’s reasons for judgment specifically stated that CJS was cast for such damages because CJS removed the trees after it acquired knowledge of the boundary dispute by the Hoopers and that the award of damages to the Hoopers was independent of any warranty of title from the LeSage defendants. Accordingly, we find no error in the trial court’s judgment denying and dismissing the third-party claim of CJS against the LeS-age defendants.
CONCLUSION
For all of the above and foregoing reasons, the May 3, 2012 judgment of the trial court is affirmed and the answer to appeal is denied. All costs of this appeal are assessed to the defendant/appellant, CJS Development, L.L.C.
AFFIRMED; ANSWER TO APPEAL DENIED.

. Thelma Helen LeSage Summers is now deceased.

. Alice Faye Bennet LeSage is now deceased.

. After this act of sale, Laurence Summers remained the owner of several adjacent tracts of land. Laurence Summers is also the ancestor-in-title to the property owned by Betsy Hooper, hereinafter described.

. According to the act of sale, this piece of immovable property was acquired by Betsy Hooper and her then husband, Myron E. His-song. Betsy Hooper testified at trial that she received her husband's interest in this property pursuant to a community property settlement.

. The act of cash sale does not disclose the date in June that it was executed on; however, the act of sale was filed and recorded on June 25, 1992.

. Apparently, the LeSage defendants acquired this property from Philo and Pinkie LeSage.

. These properties are comprised of property that was formerly owned by the Summers family.

. A boundary dispute also arose between CJS and Darryl Cleveland and Michael Mannino. Mr. Cleveland and Mr. Mannino also maintained that the old fence line was the boundary between their property and the LeS-age/CJS property. However, in that area, the old fence line was along (or close to) the record boundary between the properties.

. Mr. Cleveland and Mr. Mannino were also plaintiffs in the petition. Apparently, Mr. Cleveland and Mr. Mannino resolved their boundary dispute with CJS; however, the record does not contain a dismissal of their claims.

.According to the minutes of the trial court, the hearing on the request for injunctive relief was continued without date.

. We also find that the trial court’s apparent application of the legal principles of "tacking” under La. C.C. art. 794 was also correct, thereby allowing the possession beyond the title of Henry Hooper to be added to that of Betsy and John Hooper to reach the requisite thirty years for ownership under acquisitive prescription.

. The tort of trespass is defined as the unlawful physical invasion of the property or possession of another. Versai Management, Inc. v. Monticello Forest Products Corporation, 479 So.2d 477, 482. In addition, it is a tort (sometimes called timber trespass) to convert or cut, fell, destroy, or remove any trees growing or lying on the land of another, without the consent of the owner or legal possessor. Id. (citing former La. R.S. 56:1478.1(A), redesignated as La. R.S. 3:4278.1 by 1987 La. Acts, No. 144.)

. Specifically, Dr. Guidry identified three crepe myrtles of mature size, three dogwoods of mature size, four pine trees that ranged in trunk size from 14-18 inches, four pecan trees that ranged in trunk size from 14-24 inches, and six oak trees that ranged in trunk size from 18-45 inches.

. The trial court’s written reasons for judgment and the judgment were silent with respect to the Hoopers' request for treble damages. Silence in a judgment as to any issue that was placed before the court is deemed a rejection of that demand or issue. Hayes v. Louisiana State Penitentiary, 2006-0553 (La. App. 1st Cir.8/15/07), 970 So.2d 547, 554 n. 9, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758. Thus, the silence in the judgment as to the Hoopers’ request for treble damages is deemed a denial of that request for relief.

. We also note that there was no testimony presented by CJS that it would not have bought the 52.37 acres without the area in dispute. Additionally, there was no testimony that CJS could not develop the number of lots it intended to develop as a result of the loss of the ⅛ of an acre area in dispute. See La. C.C. arts. 1948, et seq.